### DeLAMAR *v.* FIDELITY LOAN & INVESTMENT CO.

1. Upon rescission by a corporation of a contract of subscription to its capital stock, it must restore, or offer to restore, to the other party all moneys paid by the subscriber on the purchase-money of the stock subscribed for by him, unless the company is excused from such restoration by the terms of the contract of subscription.

2. Where a subscriber to the stock of a corporation made an initial cash payment on the purchase of such stock, gave his note for the balance of the purchase-money, payable in ten monthly installments on the first day of the succeeding ten months, and paid the first and second installments as they fell due, but omitted to meet the eight succeeding installments as they became due, such failure by itself would not amount to a forfeiture of the subscription contract and of the previous payments made on the purchase-price of the stock.

   (*a*) The law does not favor forfeitures, and provisions in contracts as to forfeiture must be strictly construed.

   (*b*) A provision in a note given by the subscriber for the deferred payments of the purchase-price of such stock that it "may be cancelled and installments thereon forfeited at the discretion of the holder," and a provision in the subscription contract that "a forfeiture under the terms of said note shall ipso facto forfeit this subscription," authorized the forfeiture of the subscription and of installments paid on the purchase-price of the stock by the cancellation of the note.

(c) The right of forfeiture was contingent upon the default of the plaintiff in paying the deferred installments of the purchase-price and upon cancellation of his note by the company; and both must have occurred before forfeiture resulted.

(d) As it was in the discretion of the company to declare such forfeiture or not, the provision in the note for the forfeiture of the installments previously paid was not self-operating, but there must have been a declaration of forfeiture, or some act or conduct on the part of the company equivalent thereto.

(e) If the company did not cancel the note, but refused to do so, or if it did not notify the plaintiff on his default that it had exercised its right to forfeit these previous installments and to put an end to the subscription contract, there was no forfeiture of either under the terms of the note.

3. As the plaintiff is not attempting to get equitable relief under his contract of subscription, but is undertaking to assert rights which spring out of its abrogation, defenses which would have defeated his assertion of rights under the contract are inapplicable to his assertion of rights growing out of the rescission of the contract by the defendant.

4. When a subscriber to the capital stock of a corporation pays therefor, or pays part of the subscription price thereof, and tenders the balance to the corporation, which refuses to accept such tender, and refuses to issue to him a certificate for the shares subscribed for by him, such subscriber may sue in equity for specific performance of the contract, or he may treat the contract as repudiated by the corporation and sue for damages for its breach, or he may treat the contract as rescinded and sue for the money paid by him on his subscription.

5. The court erred in sustaining the demurrers to the petition.

No. 4236. MAY 15, 1924.

Equitable petition. Before Judge Munro. Muscogee superior court. February 1, 1924.

DeLamar filed his petition against the Fidelity Loan & Investment Company, and made this case: On July 1, 1921, he subscribed for ten shares of the ten per cent. profit-sharing capital stock of the Fidelity Loan & Investment Company of the par value of $25, and agreed to pay therefor the sum of $350, which was at the rate of $35 per share. The company was to deliver to him said stock when fully paid for. His written subscription for this stock contains this stipulation: "Should I" (the subscriber) "furnish my note for said purchase-price or any part thereof, the one shall read in conjunction with the other, the condition applying to both; and said note is in no way to operate as a novation of the obligation under the subscription and agreement, and a forfeiture under the terms of said note shall ipso facto forfeit this subscription." He paid $50 cash on his subscription for this stock; and

contemporaneously with his subscription executed and delivered to the company his note for $300, payable in monthly installments of $30, on the first day of each of the ten succeeding months. This note contains this provision: "A failure to pay any installment of this note as it falls due, together with the interest thereon, shall mature this note in its entirety, and attorney's fee of ten per centum upon the total amount due shall attach to this note in the event that it should be placed in the hands of an attorney for collection after a failure to pay any installment with interest, or this note may be cancelled and all installments thereon forfeited at the discretion of the holder thereof." He paid the installments of $30 each, falling due on August 1 and September 1, 1921; and counting them and his cash payment, he paid to the company $110 on his subscription for this stock. On or about June 29, 1922, he offered to complete the payments on his note to the company, and the company refused to accept payment. He then demanded of the company the amounts which he had paid on said stock subscription contract and note, and the company refused to refund to him said amounts. On April 21, 1923, he tendered to the company the balance of the principal of $240 due on the note, with interest on that amount to date at 8 per cent., and demanded that it issue and deliver to him 10 shares of said capital stock. The company refused to accept the amount, and refused to issue and deliver to him the stock. The company holds the subscription contract and the note, and refuses to cancel and deliver them to him. The forfeiture clause of said contract is alleged to be illegal and void, because (1) it contains a penalty contrary to the laws of this State, (2) it seeks to "increase the amount of damages forfeited beyond and contrary to the terms of said note," and (3) it shows no agreement between the parties in the contracts to agree upon reasonable and just liquidated damages. The company retains the moneys paid it in accordance with the contract, refuses to abide by its terms, has given nothing of value for said moneys, and still retains the fruits of the consideration. By reason of the above-stated facts the company is indebted to him in the sum of $110, with interest from September 1, 1921. He invokes the powers of a court of equity, and avers that he is without remedy in a court of law as to a portion of the relief sought. He is ready and willing to do equity in the premises. The subscription contract

and note are outstanding liabilities against him, and the company has not cancelled or surrendered them to him. The forfeiture clause contained in the note is a penalty, and not enforceable under the laws of this State. The company has not suffered or sustained any damages or injury growing out of the note or subscription contract. He prays that said subscription contract and note be cancelled, that he recover judgment against the company for $110, with interest from December 1, 1921, and that he have such other and further relief as might seem proper.

The defendant demurred to this petition on the grounds, (1) that it is without equity, (2) that the plaintiff is not entitled to the relief sought under its allegations, and (3) that it sets forth no cause of action. Numerous further grounds of the demurrer were special grounds. The court sustained the demurrer and dismissed the petition. To this judgment the plaintiff excepted.

*J. B. Hoyl,* for plaintiff. *Slade & Swift,* for defendant.

HINES, J. (After stating the foregoing facts.)

1. Upon rescission of a contract, the rescinding party must restore or offer to restore to the other party whatever he has received by virtue of the contract. This is the rule in cases both of rescission for fraud and of rescission by one party without the consent of the opposite party for non-performance by him of his covenants. Civil Code (1910), §§ 4305, 4306. "Restitution before absolution is as sound in law as in theology." *Summerall* v. *Graham,* 62 *Ga.* 729. So, when the defendant rescinded the subscription contract between it and the plaintiff, it should have restored or offered to restore to the plaintiff all money received by it from him upon payment of the stock subscribed for by him, unless the defendant was excused from restoration by the terms of the contract; and unless so excused, the plaintiff could treat the defendant's attempted rescission as effectual for that purpose, and could, as we shall hereafter see, sue the defendant for the recovery of the money so paid by him.

2. Do the allegations of the petition show that the plaintiff had forfeited his right to restoration of the money paid by him under his contract of subscription to the shares of the defendant? Where time is not of the essence of the contract, the nonpayment of the purchase-money or any installment thereof, at the time stipulated in the contract, would not of itself authorize a rescission of the

contract or the forfeiture of the plaintiff's rights thereunder. *Burkhalter* v. *Roach,* 142 *Ga.* 344 (82 S. E. 1059). Did the plaintiff forfeit his right to this stock and the payments made thereon by reason of his failure to meet the installments of the purchase-price of the stock as they became due? Under the allegations of the petition, he made an initial cash payment on his subscription on July 1, 1921. He gave his note for $300 for the balance of the purchase-money of this stock, payable in ten monthly installments of $30 on the first day of each of the succeeding ten months. He paid the first and second installments due respectively August 1 and September 1, 1921. He did not meet the eight succeeding installments, the last of which fell due on May 1, 1922. On or about June 29, 1922, he offered to complete the payments on his note, and the company refused to accept payment. On April 21, 1923, he tendered to the defendant the balance of the principal due on his note, amounting to $240, with interest thereon at 8 per cent., and demanded the stock. The company refused to accept that amount, and refused to issue and deliver to him the stock. The note given by the plaintiff for the deferred installments of the purchase-price of this stock provides that, upon the failure of the maker to pay any installment thereof as it falls due, it "may be cancelled and all installments thereon forfeited at the discretion of the holder thereof." The contract of subscription provides that "a forfeiture under the terms of said note shall ipso facto forfeit this subscription." Under these provisions, did a forfeiture of the subscription contract and of the payments made by plaintiff on this stock result from his delinquency in the payment of the installments of its purchase-price, when the company still kept the subscription contract and the note, and refused to cancel and deliver them to the plaintiff?

It has been said that forfeitures are abhorred in law and equity. *Glover* v. *Central Investment Co.,* 133 *Ga.* 62, 65 (65 S. E. 147). The law does not favor forfeitures. *Hicks* v. *Beacham,* 131 *Ga.* 89 (62 S. E. 45); *Parks* v. *Wilkinson,* 134 *Ga.* 14 (67 S. E. 401); *Burkhalter* v. *Roach,* supra. Provisions in contracts as to forfeiture must be strictly construed. Thus construing the provisions for forfeiture in the subscription contract and in the note, the company had the right to declare a forfeiture of the installments previously paid by the plaintiff on his note, upon his failure to

pay any subsequent installment or installments as they became due; but the exercise of this right was one in the discretion of the defendant, and depended upon a cancellation of the note. The right of forfeiture was contingent upon the default of the plaintiff in paying these installments, and upon cancellation of his note by the company. Both must have occurred before forfeiture resulted. *Georgia R. Co.* v. *Haas,* 127 *Ga.* 187 (56 S. E. 313, 119 Am. St. R. 327, 9 Ann. Cas. 677). Furthermore, as it was in the discretion of the company to declare such forfeiture or not, the provision in the note for the forfeiture of the installments which had been previously paid was not self-operating, but there must have been a declaration of forfeiture or some act or conduct on the part of the company equivalent thereto. 13 C. J. 609, § 644. If the company had intended to exercise its right to forfeit the previous installments, and thus to forfeit the subscription contract, it should have cancelled this note and delivered the same to the maker or have notified him that it had cancelled the same and that it had exercised its right to forfeit these previous installments, and thus terminate the contract of subscription. If it did not cancel the note, but refused to cancel it, or did not notify the plaintiff, on his default, that it had exercised its right to forfeit these previous installments, and thus end his contract of subscription, there was no forfeiture of either under the terms of the note. It is true that if the company had cancelled the note or notified the plaintiff of the exercise of its right to forfeit these payments, this ipso facto would have forfeited and ended the contract of subscription. The forfeiture of the previous installments, in accordance with the terms of the note, would have operated to cancel the subscription contract; but mere failure of the plaintiff to meet the installments of the purchase-price of this stock did not ipso facto forfeit the previous payments. Default of the plaintiff in the payment of these installments and cancellation of the note by the defendant, or notice of its intention to exercise its right to do so, were prerequisite to a forfeiture of the subscription contract. Until the defendant exercised its discretion to forfeit the previous payments of installments of the purchase-money, and actually cancelled the note, the plaintiff could pay the balance due upon the purchase-money of his shares, and prevent the forfeiture. An offer to pay and a tender of the balance of the principal and interest

due on the unpaid installments of the purchase-price of his stock, before such actual forfeiture of his stock, would be the equivalent of payment, and would prevent the forfeiture of his contract of subscription and of previous payments upon his note given for the purchase of this stock. So we can not say that the petition shows on its face that the plaintiff had forfeited his rights and payments made under this contract, and that for this reason he was not entitled to recover.

3. But the defendant insists that the plaintiff comes into equity without clean hands, that equity will not cancel a contract except upon grounds of mutual mistake or fraud, and that a diligent creditor should not be interfered with by a court of equity in the prosecution of his legal remedies. If the plaintiff were attempting to get equitable relief under this contract, these suggestions might have weight; but the plaintiff is not undertaking to assert rights under the contract, but rights which spring out of the abrogation of the contract by the defendant. The rescission of the contract by the defendant leaves the rights of the plaintiff to be determined by a court of equity, and not by the abrogated contract. *Lytle* v. *Scottish American Mortgage Co.,* 122 *Ga.* 458 (3) (50 S. E. 402). The plaintiff does not contest the right of the defendant to have rescinded and abrogated the contract; but proceeds to assert rights which spring from its rescission and abrogation. He takes the defendant at its word, and treats his contract of subscription to its stock as rescinded by the defendant. On this rock he builds his case.

4. When a subscriber to the stock of a corporation pays therefor, or has paid part of the subscription price of the stock and tenders the balance to the corporation, and the corporation refuses to issue to him a certificate for the shares subscribed for by him, such subscriber has a number of remedies. If the corporation refuses to issue a proper certificate of stock, and is under obligation to issue the same, he may sue in equity for specific performance of the contract. Or he may treat the contract as repudiated by the corporation, and sue for damages for its breach. Or he may treat the contract as rescinded, and sue for a return of the money paid by him on his subscription. In re Ballou, 215 Fed. 810; 2 Clark & Marshall, Corp. p. 1336; 1 Cook, Corp. (8th ed.) § 61; 14 C. J. 429, § 592; Id. 485, § 720; Mutual Loan Soc. v. Letson,

200 Ala. 251 (76 So. 17); Lake Shore &c. R. Co. v. Richards, 152 Ill. 59 (38 N. E. 773, 30 L. R. A. 33); Wood v. Universal Adding Machine Co., 166 Ill. App. 346; Watkins v. Record Photographing Abstract Co., 76 Ore. 421 (149 Pac. 478); Swazey v. Choate Mfg. Co., 48 N. H. 200; Kinser v. Cowie, 235 Ill. 383 (85 N. E. 623, 126 Am. St. R. 221). The plaintiff is pursuing the last-mentioned remedy. Having made the initial cash payment of $50 on his subscription and the two subsequent installments of $30 each thereon, and having subsequently tendered to the defendant the full amount of principal and interest due on his note given for the deferred installments, it would be inequitable and unjust for the defendant to take the money so paid on his subscription to this stock, and refuse to accept the tender of the full amount of the balance of principal and interest due thereon, unless the plaintiff had forfeited his right to his stock by his failure to make the deferred payments therefor at the time specified in his note given therefor. It does not appear from the allegations of the petition that the plaintiff had suffered such forfeiture, and for this reason he is entitled to pursue the remedy which he has chosen.

5. The grounds of special demurrer are without merit; and applying the principles above enunciated, the petition set forth a cause of action; and the court erred in sustaining the demurrers.

*Judgment reversed. All the Justices concur.*