30518, 30519. LINDGREN v. DOWIS; and vice versa.

HILL, Justice.

These two appeals involve a contract between the parties. On March 12, 1973, plaintiff Lindgren entered into a concise written contract which provided: "I agree to sell to W. Courson Dowis 7,500 shares of Pine Mountain Club Chalets, Inc., stock for $22,500; payable in cash on or before April 1, 1973." The contract was signed by the seller and was accepted as shown by the signature of the buyer.

A year later, on March 13, 1974, the seller sued the buyer for damages, the trial court overruled the buyer's motion to dismiss, and the Court of Appeals affirmed (*Dowis v. Lindgren,* 132 Ga. App. 793 (209 SE2d 233) (1974)), finding an offer by the seller, accepted by the buyer, to sell described stock at a certain price payable on or before a certain date, and saying: "This is sufficient to constitute a contract mutually binding on the parties, and is not lacking in mutuality, nor is it unilateral. . . The acceptance by the defendant was an assent to the terms of the offer . . . and was binding upon him."

Having won in the trial and appellate courts, the seller dismissed his suit. In January 1975, the seller re-filed, this time seeking damages or specific performance of the contract. Among other defenses the buyer asserted that the purported contract was not a contract and was never intended by the parties to be a contract.

Both parties moved for summary judgment and the trial court granted and denied summary judgment as follows: (1) granted seller's motion that the contract is valid and binding, (2) denied buyer's motion that no

proper tender had been made, (3) denied seller's motion that specific performance is a proper remedy, (4) granted buyer's motion that seller had suffered no direct damage, and (5) found that a question of fact exists as to any other damages to seller. Both parties appeal.

1. The buyer contends that the trial court erred in finding that the contract was valid and binding. He maintains that he did not intend to form a contract and, citing Code Ann. § 20-702, he argues that the intention of the parties is a question of fact.

In *Dowis v. Lindgren,* supra, the Court of Appeals held that this same written agreement was "mutually binding on the parties." That statement included a determination that the contract was "valid," because the court would and could not find an "invalid" contract to be "mutually binding." The trial court's later finding that the contract was "valid and binding" may have been based upon the court's examination of the contract itself or upon the decision of the Court of Appeals, or both. In any event, that decision was not erroneous.

2. The buyer also contends that the seller did not properly tender the stock and that the court erred in denying buyer's motion for summary judgment on the ground of lack of tender. The buyer cites Code Ann. § 109A-8—314(2) and points out that seller admits that he neither endorsed nor delivered the stock to buyer. The Official Comment to § 8-314 of the Uniform Commercial Code (Code Ann. § 109A-8—314 as adopted in Georgia) makes it clear that subsection (2) describes the point at which the transferor of stock has completed "delivery" (so that the risk of loss and other rights and liabilities move from the transferor to the purchaser). The section does not describe tender. Thus the seller's admissions as to nondelivery did not show that no tender was made and the trial court did not err in denying the buyer's motion for summary judgment based on lack of tender.

3. The seller enumerates as error the trial judge's order finding that specific performance is not a proper remedy in this case and therefore denying seller's motion for summary judgment on this issue.

The seller cites Code Ann. § 109A-8—319 as authority for the proposition that a written, signed

contract for the sale of securities is "enforceable." He urges that the use of the word "enforceable" connotes enforcement by specific performance. However, the cited section is a statute of frauds requiring that contracts for the sale of securities be in writing, or that there be acceptance of delivery, or payment, etc. The fact that a contract is not unenforceable under the statute of frauds does not ipso facto mean that such contract is enforceable by specific performance. Code Ann. § 109A-8—319 does not make stock sales contracts enforceable by specific performance.

The seller urges that specific performance is available to him under existing Georgia case law, citing *Times-Journal v. Jonquil Broadcasting Co.,* 226 Ga. 673 (177 SE2d 64) (1970), and *DeLamar v. Fidelity Loan &c. Co.,* 158 Ga. 361 (4) (123 SE 116) (1924), for the proposition that a contract for sale of securities may be enforced by specific performance. In both of those cases the party seeking specific performance was the buyer, the securities were not readily available other than from the seller, and damages thus was an inadequate remedy. However, *Murrey v. Specialty Underwriters,* 233 Ga. 804 (213 SE2d 668) (1975), indicates that a seller may also enforce a stock repurchase agreement by specific performance against the company which issued the stock and which formerly employed the seller.

Although the trial court may have found that the seller had an adequate remedy at law (by selling the stock to someone else), because of our ruling in Division 4 of this opinion we proceed upon a different basis.

According to the contract, the sale was to take place on or before April 1, 1973. The seller took no action until almost a year later, March 13, 1974, when he brought suit for damages. Sometime after September 3, 1974, when the Court of Appeals affirmed the overruling of the buyer's motion to dismiss, *Dowis v. Lindgren,* supra, the seller voluntarily dismissed the suit. He filed the complaint in this action on January 22, 1975, asking for specific performance of a contract which was to have been performed on or before April 1, 1973.

We find that in moving for summary judgment for specific performance of the contract, the seller did not

show that there was no issue of fact as to laches, and thus the trial court did not err in denying summary judgment that the seller was entitled to specific performance.

4. The seller contends that the trial court erred in finding that he suffered no direct damages by virtue of defendant's breach. The seller concedes that the court used the proper measure of damages—the difference between the contract price and the market price on the day of delivery, but he argues that the court erred in finding that the market price was the same as the contract price on the day for delivery and that, in fact, there was no market for the stock on the delivery date.

The contract price for the stock was $3 per share. The seller stated by affidavit and in answer to interrogatories that the stock represents shares in a closely held corporation which are not traded on a financial market, and that at the time of the making of the contract there was no market for the stock. In the buyer's affidavit accompanying his motion for summary judgment he listed four sales to establish the market price of Pine Mountain Club Chalets, Inc., stock: (1) 5,000 shares (purchased by buyer) at $3 per share on December 15, 1972; (2) 2,500 shares (sold by buyer) at $3.06 on March 14, 1973; (3) 250 shares (sold by buyer) at $3 on March 14, 1974; and (4) 2,500 shares (purchased by buyer) at $2 on April 16, 1974.

If four transactions in 15 months creates a market (see *Herrmann & Henican v. DeLaPerriere,* 47 Ga. App. 541, 543 (171 SE 232) (1933), quoting from Corpus Juris), it must also be so that as to these four transactions, the buyer was essential to the establishment of the market. Without this buyer, there was no market, and this seller entered the "market" without this buyer in view of this buyer's refusal to abide by this contract.

On motion for summary judgment the burden is on the movant, the buyer here, to show that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Code Ann. § 81A-156 (c). We find that the buyer did not carry this burden insofar as showing that the market price and contract price were the same on April 1, 1973. The buyer has not shown, to the extent necessary for summary

judgment, that a market existed for this 7,500 shares of stock, that the market price was $3 on April 1, 1973, and hence that the seller suffered no actual damages by the breach. We therefore must reverse the trial court's grant of summary judgment to the buyer on the issue of direct damages.

5. Finally the buyer urges as error the trial court's failure to grant summary judgment to him on the issue of the seller's consequential damages in reliance on the contract. Citing Code Ann. § 20-1406, he contends that damages arising from financial commitments which the seller allegedly entered into relying on the contract are not recoverable. The seller contends that he has damages which are recoverable under Code Ann. § 20-1407.

Code Ann. § 20-1407 provides for damages not only "such as arise naturally and according to the usual course of things from such breach" but also "such as the parties contemplated, when the contract was made, as the probable result of its breach." There is nothing in the record to show whether the parties contemplated damages from these financial commitments as a probable result of the breach. There is, therefore, a genuine issue as to a material fact and the trial court did not err in denying the buyer's motion for summary judgment on the issue of contemplated damages.

*Judgment affirmed as to Case No. 30519; judgment affirmed in part and reversed in part as to Case No. 30518. All the Justices concur, except Gunter and Ingram, JJ., who concur in the judgment only.*

SUBMITTED NOVEMBER 14, 1975 — DECIDED FEBRUARY 12, 1976.

*Valianos, Joh & Homer, Christopher J. Valianos, Roy D. Moultrie,* for appellant.
*W. B. Steis, E. Earl Seals,* for appellee.