Richard J. **FERRIS**

v.

Max **HAWKINS** and Lenscraft Optical Company.

No. 81–582–Appeal.

Supreme Court of Rhode Island.

March 16, 1983.

Adler, Pollock & Sheehan, John F. Bomster, John Tarantino, Providence, for plaintiff.

Hanson, Curran & Parks, A.L. Parks, James T. Murphy, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case involves a dispute that arose from an agreement between the parties concerning the acquisition of ownership of the defendant corporation. A nonjury trial resulted in a judgment against only the corporate defendant. Both parties have appealed. We sustain the plaintiff's appeal and deny and dismiss the appeal of the defendants. The facts as found by the Superior Court justice are as follows.

The plaintiff Richard J. Ferris (Ferris), an optometrist, established the Solitaire Optical Company, Inc. (Solitaire),[1] in 1971. The purpose of incorporation was the establishment of an optometrical laboratory. Ferris was the sole shareholder of all Solitaire's capital stock.

On or about December 1, 1975, following extensive negotiations, Ferris and defendant Max Hawkins (Hawkins) reached an agreement for the sale of Solitaire. Their contract was incorporated into a stock-purchase agreement among Ferris, Solitaire, and Hawkins. Pursuant to said agreement, the ownership of Solitaire would be transferred to Hawkins in return for $100,000. All of the funds to be utilized by defendants in the consummation of the stock-purchase agreement were to be furnished by means of a loan from Rhode Island Hospital Trust National Bank, as guaranteed by arrangements with the Small Business Administration. The agreement provided further that Hawkins would acquire 250 shares of Solitaire's common stock in exchange for $25,000. Immediately thereafter, plaintiff would deliver to Solitaire all of his shares of common stock in exchange for a $100,000 certified or bank check. In addition, Ferris agreed to acquire title to a certain building and real estate located in Warwick, Rhode Island, prior to the closing date of the

---

1. It was stipulated by the parties at trial that Solitaire Optical Company, Inc., and defendant Lenscraft Optical Company are the same corporation in respect to legal rights, duties, and obligations.

stock-purchase agreement. Such premises would thereafter be leased to Solitaire for a period of ten years with an option to purchase. Solitaire similarly bound itself to lease the Warwick site.

At the time this agreement was entered into, the Warwick site was the subject of a purchase and sale agreement between the owner, Dalland Properties, and Solitaire. However, at the time of the closing of the stock-purchase agreement, which was held on February 18, 1976, Ferris had been unable to obtain clear title to the Warwick site. Thus, he was unable to buy, and hence lease, the building to Solitaire. Hawkins thereupon waived the condition of the lease, and the parties agreed that Ferris's failure to acquire the Warwick premises would not be a violation of the agreement. To satisfy themselves that Ferris would be in a position to finance adequately the acquisition of said realty, defendant Hawkins and his attorney proposed that the purchase price of the Warwick site ($66,500) be withheld from the $100,000 consideration for the aforementioned stock. The sum withheld was to be placed in "escrow"[2] pending the acquisition of the realty. Ferris agreed to this proposition and to the payment of 5 percent "passbook" interest by defendant corporation, until he purchased the premises in Warwick. Ferris further agreed to lease another building to Hawkins and Solitaire until he made such purchase.

The plaintiff experienced continuing difficulty in obtaining clear title to the Warwick site. Therefore, on October 1, 1976, defendants, by their attorney, advised Ferris that Solitaire had leased new quarters in lieu of the Warwick premises. Hawkins and Solitaire further purported to cancel any lease obligation in respect to said property, claiming a loss of $5,000 in consequence of Ferris's inability to perform.

Subsequent to the foregoing, Ferris demanded that Hawkins and Solitaire return to him the $66,500 that they had withheld from the purchase price of plaintiff's stock.

As a result of defendants' repeated refusals to meet such demands, Ferris filed a complaint in the Superior Court on January 12, 1977. In September 1981 the trial justice rendered a bench decision whereby plaintiff was awarded $66,500, plus interest and costs, in damages for Solitaire's breach of contract. The defendant, Max Hawkins, was found not liable in his individual capacity for failing to pay Ferris $66,500 for the receipt of 1,000 shares of stock. Thereafter both parties filed timely appeals to this court.

■ The defendants contend that the trial justice was incorrect in finding that Solitaire breached the stock-purchase agreement. We disagree. It is well settled that the findings of fact made by a trial justice, sitting without a jury, will be accorded great weight. Such findings will not be disturbed on appeal unless they are clearly wrong or it is shown that the trial judge misconceived or overlooked material evidence. *Altieri v. Dolan,* R.I., 423 A.2d 482, 484 (1980); *Taffinder v. Thomas,* 119 R.I. 545, 549, 381 A.2d 519, 521 (1977); *Russo v. Stearns Farms Realty, Inc.,* 117 R.I. 387, 391, 367 A.2d 714, 717 (1977); *see* 1 Kent, *R.I.Civ.Prac.* § 52.5 at 384 (1969).

■ The same legal principles govern, with regard to the elements of a contract for the sale of stock, as apply in the case of contracts generally. *See Kagel v. First Commonwealth Co.,* 409 F.Supp. 1396 (N.D. Cal.1973), *aff'd,* 534 F.2d 194 (9th Cir.1976); *Lindgren v. Dowis,* 236 Ga. 278, 223 S.E.2d 682 (1976); *Friedman v. Bachmann,* 234 A.D. 267, 254 N.Y.S. 689 (1932). In spite of the cumbersome involvement of the corporation in this transaction, the essential agreement between Hawkins and Ferris was to effectuate a sale of stock. Ferris was to transfer his stock by way of the corporation to Hawkins. In return, Hawkins agreed to pay to Ferris the sum of $100,000. It is true that Hawkins intended to implement this transaction by causing

---

2. The evidence relating to the establishment of an escrow account indicated that no formal agreement was ever drawn up but that the money was just withheld by Hawkins.

the corporation to borrow the sum of $100,-000 and pay it out at the closing to Ferris.[3] At the time of the closing, the funds were available and Hawkins withheld them, not because Ferris had not performed his part in the stock transfer, but because Ferris planned to purchase a building (to be leased and ultimately sold to Solitaire) in the event that a clear title could be obtained. The building agreement was wholly independent, not a condition either precedent or subsequent to the sale of stock. Performance of independent covenants need not be shown to entitle the seller to demand and receive payment for the stock. Nor will a breach of such provisions be a bar to his recovery. *Guglielmi v. Guglielmi,* R.I., 431 A.2d 1226, 1228 (1981); *Marra v. Colaluca,* 47 R.I. 210, 213, 132 A. 6, 7 (1926); *see McMillan v. Batten,* 52 Or. 218, 223–24, 96 P. 675, 677 (1908). Therefore, since the acquisition of the realty in question was an independent covenant, to be separately performed, and since it did not constitute consideration for the purchase of stock, Ferris's inability to implement this transaction did not affect his right to receive payment for his stock.

Upon the determination that the building site could not be acquired, Hawkins and the corporation had an absolute obligation to pay to Ferris the balance of the moneys that had been withheld, namely $66,500 with interest. In failing to pay over the purchase price of the stock, Hawkins and Solitaire (now wholly owned by, and the alter ego of, Hawkins) became jointly and severally liable for payment. Here there is such a unity of interest and ownership that the separate personalities of Hawkins and the corporation no longer exist in reality. "Adherence to the principle of their separate existence would, under the circumstances, result in injustice." *Muirhead v. Fairlawn Enterprises, Inc.,* 72 R.I. 163, 172–73, 48 A.2d 414, 419 (1946).

For the foregoing reasons, we are of the opinion that the trial justice was correct in entering judgment against Solitaire in the amount of $66,500 plus interest. However, we believe that the trial justice erred in failing to render judgment in the same amount against Hawkins.

Consequently, the plaintiff's appeal is sustained, and the appeal of the defendants is denied and dismissed. The papers in the case may be remanded to the Superior Court, with directions to enter judgment for the plaintiff against both defendants in the amount of $66,500 plus interest and costs.

---

**3.** Although it has not been raised on appeal, the corporation's use of borrowed funds to effectuate this transfer of stock is of highly doubtful legality, at least in respect to third-party creditors. General Laws 1956 (1969 Reenactment) § 7–1.1–5(a) states in part:

"A corporation shall have the right to purchase * * * its own shares * * * only to the extent of its unreserved and unrestricted earned surplus available therefor, or, if it has no earned surplus, to the extent of its unre-

served and unrestricted capital surplus pursuant to the provisions of § 7–1.1–41."
Since no balance sheets of the corporation have been introduced into evidence in this case, we are unable to state the effect of the borrowing upon the retained earnings or capital surplus of the corporation. At this time we shall only observe that Hawkins may have an obligation to indemnify the corporation and its creditors in the event that he caused the corporation to violate the provisions of the applicable statute.