76095. WEST v. MACHE OF COCHRAN, INC.
(370 SE2d 169)

BEASLEY, Judge.

Appellant brought this wrongful death action individually as surviving parent of his two minor children and surviving spouse of his deceased wife against appellee, a licensed firearms dealer subject to federal and state regulations governing the sale of firearms. The complaint alleged that on December 21, 1985, Mache sold and delivered a semi-automatic rifle and two packs of bullets to Curtis Brown; that prior to this sale Brown had been committed to a mental institution for approximately eleven years as a result of the brutal assault and rape of an elderly woman; that at the time of the sale Brown could neither read nor write, could not produce a driver's license or other identification and was obviously illiterate, incompetent and ineligible under federal law and appellee's store policy to purchase such a weapon; and that Mache had actual knowledge that it could not legally sell a firearm to Brown and knew or should have known that placing a firearm in his hands posed a dangerous threat to the citizens of the community.

It was further asserted that notwithstanding these facts, and in order to realize a sale and to avoid the laws designed to protect citizens from persons like Brown, appellee allowed Brown's estranged wife to sign in her own name the documentation necessary to effectuate the sale; that appellee's clerk then accepted Brown's money and gave him the rifle and bullets; and that approximately three weeks later Brown took his new rifle into the backyard behind the Wests' residence and, without provocation or justification of any sort, fired this weapon through the window of their home, killing Donna West with a bullet through her head. The complaint also set forth that Brown had been tried for this murder and found guilty; that appellee's sale of the rifle to Brown constituted an actionable act of negligence in that it was in violation of 18 USCA § 922 (d) (4) which prohibits a licensed firearms dealer from selling firearms to a person who

has been committed to a mental institution; and that this sale was the proximate cause of the death.

Evidence presented to the jury showed that Brown first came into appellee's store on November 5, 1985, to buy a rifle and was waited on by the assistant manager. He had known Brown as a customer of the store since 1976 but did not know Brown's age, where he was from, or his history of mental illness. However, he knew that Brown could not read or write and had a speech impediment, and that although he was "around forty" years old, had only been seen using a bicycle for transportation. Brown chose a semi-automatic rifle to put on layaway. The assistant manager filled out the layaway form, identifying Brown as the purchaser, and Brown paid a cash deposit of $10 and signed the contract by marking an "X" to show he agreed to pay the full amount due. Brown made additional payments on November 9 and 30. On December 21 Brown went to the store to make his final payment and was waited on by the assistant manager. Brown could produce no driver's license or other positive identification, which was required by both the federal statute and store policy for the purchase of firearms before presenting the necessary federal form for completion. When he told Brown he could not sell him the rifle and offered a refund, Brown said he would have his wife come to the store with her driver's license. Brown brought her to the store, she produced her driver's license, and the assistant manager had her fill out the federal form by reading the questions to her. She signed it after answering "no" to the question, "Have you ever been adjudicated mentally defective or have you ever been committed to a mental institution?" Curtis Brown paid the final payment on the rifle and made another mark on the layaway form to document that the merchandise was delivered to the customer. Brown also purchased two packs of hollow point bullets and was instructed how to break the gun down and put it back together. He took the gun and left the store. After Brown was charged with Mrs. West's murder, he was examined by psychiatrists and adjudged mentally competent to stand trial, was tried and convicted.

Upon the close of the evidence, plaintiff moved for a directed verdict, which was denied. The trial court instructed the jury on proximate cause and foreseeability, in particular that "the plaintiff has the burden of presenting evidence that the defendant knew or should have known that Curtis Brown was liable to commit a violent criminal act with the gun in question." The jury returned a verdict in favor of Mache and plaintiff claims error in the failure to grant his motion for directed verdict and in the charge on proximate cause and foreseeability.

1. 18 USCA § 922 (d) (4) provides: "It shall be unlawful for any . . . licensed dealer . . . to sell or otherwise dispose of any firearm or

ammunition to any person knowing or having reasonable cause to believe that such person . . . has been adjudicated as a mental defective or has been committed to any mental institution." In *Huddleston v. United States*, 415 U. S. 814, 824-825 (94 SC 1262, 39 LE2d 782) (1974), the Supreme Court studied the legislative history of the Gun Control Act to clarify the reasons for its enactment, concluding: "Congress determined that the ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States. [Cit.] The principal purpose of the federal gun control legislation, therefore, was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.' [Cit.] . . . The principal agent of federal enforcement is the dealer. He is licensed, §§ 922 (a) (1) and 923 (a); he is required to keep records of 'sale . . . or other disposition,' § 923 (g); and he is subject to a criminal penalty for disposing of a weapon contrary to the provisions of the Act, § 924. . . . Information drawn from records kept by dealers was a prime guarantee of the Act's effectiveness in keeping 'these lethal weapons out of the hands of criminals, drug addicts, mentally disordered persons, juveniles and other persons whose possession of them is too high a price in danger to us all to allow.' [Cit.]. . . . From this outline of the Act, it is apparent that the focus of the federal scheme is the federally licensed firearms dealer, at least insofar as the Act directly controls access to weapons by users." (Indention omitted.)

Insofar as Georgia law is concerned, "[i]t has been uniformly held in this State that a violation of a penal statute, resulting in injury, is negligence per se and authorizes a recovery by the party injured, without other negligence. [Cits.] There is no doubt as to this legal proposition; and if the [ineligible person] who bought the [rifle] from the defendants had intentionally or negligently discharged it, causing injury to another, in the absence of negligence on the part of the injured person, the right to recover damages would result, without proof of any other act of negligence on the part of the defendants. [Cit.]" *Spires v. Goldberg*, 26 Ga. App. 530, 532 (106 SE 585) (1921). Since the Gun Control Act expressly prohibits the sale of firearms to any person who has ever been adjudicated as a mental defective or has ever been committed to a mental hospital, Brown's mental capacity at the time appellee sold him the rifle is not determinative of his status as a mentally defective person to whom the Act forbids a sale.

" 'In determining whether the violation of a statute or ordinance is negligence *per se* as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against. [Cits.]' " *Central Anesthesia Assoc. v.*

*Worthy*, 173 Ga. App. 150, 153 (325 SE2d 819) (1984); aff'd 254 Ga. 728 (333 SE2d 829) (1985). Accord *Montgomery Ward & Co. v. Cooper*, 177 Ga. App. 540 (1) (339 SE2d 755) (1986). Thus, if Brown had previously been committed to a mental institution "at the time of the sale and could not have obtained the requisite certificate, [appellee] was negligent per se in this case by selling the [rifle to Brown] in violation of the [federal Act] because (1) [Mrs. West] falls within the class of persons the [Act] was intended to protect (i.e., potential victims of criminal acts by [mental incompetents] involving [guns]), and (2) the harm complained of (i.e., injuries from a criminal shooting) was the harm the [Act] intended to guard against." *Montgomery Ward*, supra at 541.

Liability for negligence per se under the federal Gun Control Act has not been previously considered in Georgia. Decisions from other states persuade towards the conclusion that plaintiff carried his burden of proving a breach of duty. "The regulations issued under the Act are, in our opinion, the real key to its enforcement. The regulations require the licensed dealer, *prior* to making an over-the-counter delivery of a firearm to a purchaser, to complete Form 4473, the Firearms Transaction Record. That record must show the buyer's name, address, date and place of birth, height, weight, and race, and must include his signed certification that he has not [been adjudicated as a mental incompetent or committed to any mental institution]. The seller, *before* transferring the gun, must require the buyer to identify himself in any manner customarily used in commercial transactions, as by a driver's license. Form 4473 requires the number on the identification, such as the driver's license number, to be entered on the form. . . . This is not, as the appellees argue, a mere matter of record keeping. Form 4473 required the seller to obtain and record [Brown's] identification *before* handing over the gun. [Brown] had no identification. Thus, had the law been obeyed, he could not have obtained possession of the gun and could not have used it to shoot [Mrs. West]." (Indention omitted.) *Franco v. Bunyard*, 547 SW2d 91, 92 (Ark. 1977). Accord *K-Mart Enterprises v. Keller*, 439 S2d 283 (Fla. App. 1983).

Appellee's argument that the rifle was sold to Brown's wife rather than to Curtis Brown is specious and not supported by the evidence. Its protestations that there was no way it knew or could have known of Brown's adjudication of mental incompetence is likewise not persuasive, as this is precisely the information that proper use of the statutory procedure was intended to elicit. "The cause of [Mrs. West's death] was the careless manner in which [Hinson] permitted [Brown], a mentally deranged person, to come into possession of the [rifle] and ammunition. It was relevant to causation that he was a medically diagnosed [mental incompetent]. That the defendants had no safety

procedures in place for such an eventuality is likewise relevant. It is no excuse to say that [Hinson] did not know [Brown] was a mental case, because [he] made no attempt to ascertain whether he was or not before enabling [Brown] to be in a position to harm others.

"The defendants' conduct condemns them whichever way their argument goes. If we assume that by a reasonably careful questioning and observation by a mature, experienced dealer in firearms [Brown's] mental condition would have been suspected, then the defendants are clearly liable. If we say that [Brown] could have masked his condition so that no layman could ever know anything about his condition, the defendants were likewise negligent. That loaded [rifles] are especially dangerous and life threatening when possessed by mentally disturbed people is a matter of common knowledge, and firearms dealers should be especially cognizant of this. Any such dealer should have in effect in his business some safeguard to see that a loaded [gun] is not placed in the hands of an unknown person, who may very well be a mental case, unless or until his background can be thoroughly investigated." *Howard Bros. v. Penley*, 492 S2d 965, 968, 969 (Miss. 1986).

The fact that Brown had been a customer in Mache's store in the past in no way alleviated its duty of care commensurate with the potential danger of dispensing firearms to the public. "Or put another way, reasonable care requires conduct by the dealer which shows he recognizes the potential danger and acts accordingly." Ibid. Accord *Montgomery Ward*, supra.

Courts have uniformly held that those charged by the law with the responsibility of keeping guns from certain individuals cannot, when they ignore that responsibility, avoid liability by claiming it was unforeseeable that the ineligible purchaser would misuse the gun. Thus the trial court's charge that plaintiff had the burden of proving that appellee "knew or should have known that Curtis Brown was liable to commit a violent criminal act with the gun in question" was a misstatement of the law.

2. "Where a statute provides a general rule of conduct, although only amounting to a requirement to exercise ordinary care, the violation thereof is negligence as a matter of law, or negligence per se, whereas in the absence of such specific statute the jury is left to determine whether such conduct constitutes negligence. [Cit.]" *Teague v. Keith*, 214 Ga. 853, 854 (1) (108 SE2d 489) (1959). Plaintiff was thus entitled to a directed verdict on the question of liability, for there was no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demanded a verdict in his favor. OCGA § 9-11-50 (a). The four essential elements to authorize a recovery for negligence as established in *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982),

to wit: duty, breach, causation and damages, were met. Because the amount of damages was not determined, however, that issue must be decided by a trier of fact.

*Judgment reversed with direction. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED MAY 6, 1988 —
REHEARINGS DENIED JUNE 2, 1988 —

*Thomas F. Richardson, Marc T. Treadwell*, for appellant.
*Edgar A. Neely III, Taylor T. Daly*, for appellee.