A89A1057. WALTER v. ORKIN EXTERMINATING COMPANY, INC. et al.
(385 SE2d 725)

DEEN, Presiding Judge.

This is an appeal from the final order of the trial court denying summary judgment to the appellant and dismissing her complaint.

Appellant entered a contract for the fumigation of her house by the appellee Orkin Exterminating Company (Orkin). Appellant left her house in the care and temporary possession of Orkin so that fumigation by "vikane," a nonflammable gas, could be accomplished. Fumigation commenced and the next morning when Orkin personnel ar-

rived at the site, they discovered appellant's home had burned down. Appellant brought suit on both tort by negligence and breach of contract theories. *Held*:

1. Appellant asserts that the trial court erred by dismissing her complaint averment of breach of contract.

Pest control fumigation is an inherently dangerous activity. Accordingly, administrative rules and regulations implementing pest control safety statutes provide for certain safety measures to be taken to protect the public during such a process.

OCGA § 43-45-8 (1) pertinently provides that the State Structural Pest Control Commission is authorized and *required* to "[m]ake such reasonable rules and regulations as may be necessary to protect the interest, health, and safety of the public and to ensure the efficiency of licensees, operators, and registered employees to carry out this chapter." Pursuant to this statutory obligation, the Commission has duly promulgated certain rules governing structural pest control. See generally Official Compilation of Rules & Regulations of the State of Ga., Rules of Ga. Structural Pest Control Comm., Chapters 620-1 through 620-10.

Rule 620-8-.02 (1) establishes the following pertinent notification *requirements*: "The Licensee shall notify the Enforcement Agency [Georgia Department of Agriculture] and the local fire and police departments having jurisdiction, before performing fumigation of any residential or commercial building or other potentially habitable structure. . . ."

Rule 620-8-.04 (1) (c) requires that the operator-in-charge shall: "[m]ake a final inspection before releasing the fumigant and personally confirm that all preparations have been completed, including: . . . 2. [t]hat all open flames, pilot lights or oil lamps have been appropriately extinguished. . . . 6. [t]hat a capable, alert watchman is present at the fumigation site to prevent entry of any unauthorized person until the exposure period has elapsed. . . ."

The rules promulgated by the State Structural Pest Control Commission pursuant to the general power vested in the Commission under OCGA § 43-45-8 constitute a body of binding *administrative law* pertaining to all fumigation, as that term is defined in Rules 620-8-.01. It is well-established that " '[t]he laws which exist at the time and place of the making of a contract, enter into and *form a part of it*' [cits.]; and the parties *must* be presumed to have contracted with reference to such laws and their effect on the subject matter. . . ." (Emphasis supplied.) *McKie v. McKie*, 213 Ga. 582 (2) (100 SE2d 580); *Busbee v. Ga. &c. Univ. Professors*, 235 Ga. 752 (2) (221 SE2d 437); *Freeman v. Decatur Loan &c. Corp.*, 140 Ga. App. 682 (3) (231 SE2d 409); EGL, Contracts § 6. Accordingly, we find that the above rules were part and parcel of any fumigation contract entered be-

tween the appellant and appellee Orkin. In this case, had appellees strictly complied with these rules, regardless of the original purpose for which they were promulgated, it reasonably appears that the degree of damages sustained by appellant could have been reduced, although not totally prevented. In any event, a genuine issue of material fact exists as to whether certain provisions of the aforementioned rules have been complied with by the appellees.

Compensatory damages may be awarded as a result of breach of contract. OCGA § 13-6-1. However, damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and as the parties contemplated, when the contract was made, as the probable result of its breach. OCGA § 13-6-2. Moreover, remote or consequential damages are not recoverable unless they can be traced solely to the breach of the contract or unless they are capable of exact computation and are independent of any collateral enterprise entered into in contemplation of the contract. OCGA § 13-6-8; *National Consultants v. Burt*, 186 Ga. App. 27, 36 (366 SE2d 344), writ vacated, 258 Ga. 645 (374 SE2d 532); EGL, Damages § 14. OCGA § 13-6-2 (Code Ann. § 20-1407) "provides for damages *not only* 'such as arise naturally and according to the usual course of things from such breach' *but also* 'such as the parties contemplated, when the contract was made, as the probable result of its breach.'" (Emphasis supplied.) *Lindgren v. Dowis*, 236 Ga. 278 (5) (223 SE2d 682); Cobb & Eldridge, Ga. Law of Damages (2d ed.) § 2-4. "In contract actions, damages which may reasonably be considered to be in the contemplation of the parties are recoverable. This is distinguished from the tort situation where the consequences which naturally *and proximately* follow the wrongful act need not have been contemplated by the parties." (Emphasis supplied.) Cobb & Eldridge, supra at p. 24, n. 3. Usually, the question of what matters reasonably may be said to have been in the contemplation of the parties when the contract was made is one of fact for jury determination. Based on the record now before us, we find that the trial court erred in dismissing the breach of contract averment and its prayer for compensatory damages.

2. Appellant contends it was error to dismiss her claim for negligence in that the doctrine of the res ipsa loquitur established her prima facie case of negligence.

The elements of the res ipsa loquitur doctrine are: " '(1) injury of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.' " *Simonds v. Conair Corp.*, 185 Ga. App. 664 (3) (365 SE2d 507); *Johnson v. Dallas Glass Co.*, 183 Ga. App. 584, 585 (359

SE2d 448). Further, "[t]he accident must also be 'of a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence.' " *Housing Auth. &c. v. Famble*, 170 Ga. App. 509, 525 (317 SE2d 853). Moreover, " '(r)es ipsa loquitur should be applied with caution and only in extreme cases; . . . it is not applicable when there is an intermediary cause which produced or *could* produce the injury, or where there is direct unambiguous testimony as to the absence of negligence by the defendant, or where there is no fair inference that the defendant was negligent.' " Id. at 526. In this case, appellant's house was destroyed by fire. There is evidence that a portion of the structure included a log cabin over 100 years old. There is also some evidence that a gas line to a stove *could* have been severed by someone moving the stove; there exists no evidence that Orkin personnel moved the stove, and the stove was under the exclusive control and ownership of appellant *before* Orkin personnel took over the premises to begin fumigation procedures. Considering these factors, together with all other evidence of record, we are satisfied that even under the more relaxed test of *Sams v. Gay*, 161 Ga. App. 31 (2) (288 SE2d 822) and *Smith v. Telecable &c.*, 142 Ga. App. 535, 536 (236 SE2d 523), the evidence in this case does not afford "a rational basis for concluding that the house would not have burned in the absence of negligence *and* that the [appellees were] responsible for any negligence which may in fact have occurred." (Emphasis supplied.) *Sams*, supra at 34. Moreover, the evidence before us falls short of meeting the standard of *Famble*, supra at 526, that "[b]efore res ipsa loquitur is applicable, the act must speak not only of negligence, but of negligence on the part of the defendant."

Accordingly, we are satisfied that the trial court did not err as asserted in the above enumeration.

3. The appellant also asserts that the trial court erred in dismissing that portion of her complaint grounded on her claim of negligence per se.

In determining whether the violation of a statute, or ordinance, is negligence per se as to a particular person, it is necessary to examine the purposes of the legislation and decide " ' "(1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against." ' " See *West v. Mache of Cochran*, 187 Ga. App. 365, 367 (370 SE2d 169); *Lively v. Trust*, 184 Ga. App. 361, 362 (361 SE2d 516). To prevail on a negligence per se claim, a causal relation between the violation of the statutory duty and the injuries sustained thereby must be shown. *Central Anesthesia Assoc. v. Worthy*, 254 Ga. 728, 730 (333 SE2d 829).

In the instant case, there is no question that the appellant fell within the class of protected persons, and it seems fairly clear that

the risk of fire was one of the harms guarded against by the pertinent regulation, else the requirement of notifying the local fire department would make little sense. Concerning the necessity of showing a causal connection between the violation of the regulation and the injuries sustained, the appellant submitted the affidavit of the fire chief, who stated that "the fire at the Myrtice Walter residence would have been brought under control easier and there would have been less damage to the Myrtice Walter property if the Union County Fire Department had been notified sooner of the fire." Presumably, had the appellees posted a watchman as required, the fire department would have been notified sooner. This evidence sufficed to create a jury question on the issue of damages in the negligence per se claim, and the trial court erred in dismissing the appellant's complaint on that claim.

*Judgment reversed. Carley, C. J., McMurray, P. J., Banke, P. J., Sognier, Pope and Benham, JJ., concur. Beasley, J., concurs specially. Birdsong, J., concurs in part and dissents in part.*

BEASLEY, Judge, concurring specially.

I fully concur in Divisions 1 and 2. Because of the dissent's interpretation of Division 3, I must explain my concurrence in that division. The majority acknowledges that plaintiff must show a causal connection between the breach of a legal duty and the damages complained of but then points to the fire chief's affidavit as evidence related to the amount of damages. That does not address the proximate cause element of the alleged tort. The fire chief's affidavit provides some evidence that the defendants' failure to post a watchman was a contributing cause of the extent of the damages sustained. Since movant failed to show conclusively that its acts or omissions while it was in custody and control of the premises were not a proximate cause of the injuries suffered by plaintiff as a result of the fire, it was not entitled to dismissal of plaintiff's complaint.

BIRDSONG, Judge, concurring in part and dissenting in part.

I fully concur with Divisions 1 and 2 of the majority opinion. However, I am compelled to dissent to Division 3.

1. Negligence per se provides only two of the four elements required to sustain a cause of action based on a negligence tort, that is duty and breach thereof. In order to prevail, plaintiff must still establish the elements of causation and damages. See generally *Central Anesthesia Assoc. v. Worthy*, 254 Ga. 728, 730 (333 SE2d 829); *Whelchel v. Laing Properties*, 190 Ga. App. 182, 185 (378 SE2d 478). Unlike my learned colleagues, I do not believe that causation has been established in this case. There exists not one shred of evidence in this record that any act or omission of Orkin or its agents was the proximate cause of the *starting* of the fire on this premises (a part of

which is shown to have been built over 100 years ago). Nor is there any evidence in this record to establish that Orkin, who was using a nonflammable, *flame-retardant* gas to fumigate the premises, was a joint tortfeasor. Thus, clearly the evidence of record creates no genuine issue of proximate cause for jury resolution.

It is a " 'well settled principle of negligence law that the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence.' " *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200, 202 (345 SE2d 904); *Franklin v. Elmer*, 174 Ga. App. 839, 842 (332 SE2d 314). Moreover, for reasons stated by the majority in Division 2 of its opinion, appellant is not entitled to avail herself of the principle of res ipsa loquitur in this instance to supply the necessary inference to overcome the lack of proof of causation.

The majority apparently, however, finds a sufficient showing of *causation* solely in the fire chief's affidavit. I do not. First, the affidavit fails to establish that failure to notify the fire department of the contemplated fumigation was the cause of appellant's injury, that is, the *fire*. Moreover, the affidavit in effect establishes that *if* the fire department had received earlier notification of the *existence* of a fire, such notification *at best* would have allowed the fire to be controlled easier to some unstated degree; thereby, in the fire chief's opinion, resulting in some unspecified lesser amount of *damage*. It is well established in this state that the causal connection required is between the defendant's conduct and the plaintiff's *injury*. See generally *International Brotherhood &c. v. Briscoe*, 143 Ga. App. 417, 429 (7) (239 SE2d 38); accord *Locke v. Vonalt*, 189 Ga. App. 783 (7) (377 SE2d 696); *Brandvain v. Ridgeview Institute*, 188 Ga. App. 106, 115 (3) (b) (372 SE2d 265). It seems to me that the majority has required that only a genuine issue exists as to *damages*, and has ignored the element of causation of *injury* in reaching its conclusion that a jury question arises as to Orkin's liability based on a theory of negligence per se.

I am seriously concerned that the majority today has in effect established precedent expanding the doctrine of negligence per se in this state. In particular, as I interpret the majority opinion, negligence per se now establishes three of the required elements of a tort based on negligence, that is, duty, breach, and causation; henceforth, plaintiff to prevail under such a cause of action needs only establish that the defendant in some manner, no matter how remote, caused or contributed to the causation of some degree of defendant's *damages*. This in my view is contrary to the established tort law of this state.

2. Additionally, I am not persuaded by the majority's *threshold* conclusion that "the requirement of notifying the local fire department would make little sense" unless it is construed to have been promulgated with the intent of guarding against the risk of fire. This

bare conclusion flies in the face of both the implementing regulations when examined in toto and the nature of the fumigation process itself. OCGA § 43-45-8 (1) on its face shows that the *general* purpose for requiring the promulgation of rules and regulations by the State Structural Pest Control Commission primarily was to "protect the interest, health, and safety of the public." This statute does not make any reference to the specific type of regulatory requirements needed, but leaves that matter to the sound expertise and discretion of the Commission. " '(A) statute must be construed with reference to the whole system of which it is a part. . . .' " *Allison v. Domain*, 158 Ga. App. 542, 544 (281 SE2d 299). Likewise, "[i]n the interpretation of a statute the courts must look diligently for the intention of the General Assembly. [Cit.] This is the cardinal rule in the construction of statutes. . . . The construction must square with *common sense* and *sound reasoning*." (Emphasis supplied.) *Blalock v. State*, 166 Ga. 465, 470 (143 SE 426). These same rules apply in the construction of administrative regulations promulgated in implementation of statute. *Cross v. Balkcom*, 102 Ga. App. 81, 83 (115 SE2d 783), reversed on other grounds, 216 Ga. 530 (118 SE2d 185); see *Risser v. Thomasville*, 248 Ga. 866 (286 SE2d 727) (applying rules governing the construction of statutory enactments to an ordinance).

Applying these rules, I find that the purpose for requiring modification of the fire department was not to prevent fires on the premises, but rather to alert them to the location and time of the dangerous fumigation process so that they could timely respond with proper emergency rescue equipment if someone accidentally was to become contaminated by the lethal gas during fumigation. This interpretation is supported by the very words of the Commission's rules which expressly require the presence of a watchman "to prevent entry of any unauthorized person until the exposure period has elapsed. . . ." Further, this interpretation is the one which best squares with "common sense and sound reasoning." Vikane not only is nonflammable; it is *flame retardant*. There exists no danger of a fire being caused by Vikane. Further, the record establishes that the fumigation process does not pose a reasonable risk of fire, but that the lethality of the gas used during fumigation does pose a real threat to human life. Certainly, the Commission can be expected to have used its knowledge and expertise as to the fumigation process when crafting its rules. Thus, common sense and sound reasoning compel the conclusion, in addition to the express words contained within the rules, that the rules were designed to protect the public against the clear possibility of accidental exposure to the fumigant and not against any perceived danger of exposure to fire. Therefore, I believe that the majority has erroneously concluded that the appellant falls within the class of persons the rules actually intended to protect.

I respectfully dissent.

Decided July 14, 1989 —
Rehearings denied July 31, 1989 —

*Stone & Williams, Wesley Williams, McKenzie & McPhail, Michael A. McKenzie, Jefferson C. McConnaughey*, for appellant.

*Decker & Hallman, Richard P. Decker, W. Winston Briggs*, for appellees.