## 48785. DANIEL v. THE STATE.

EBERHARDT, Presiding Judge. Defendant and two others were indicted for conspiring to rob one B. B. Partain, defendant's former husband. Defendant was tried separately and convicted, and she now appeals. *Held:*

1. Defendant urges that the only evidence that connects her with any crime, including the conspiracy itself, is the uncorroborated testimony of the alleged co-conspirator Walker; and that when certain objections were sustained to Walker's testimony where he "guessed" defendant was taking fuses out of the fuse box at Partain's home in order to cut off the lights, no evidence was left to connect her with the actual occurrence at the Partain home.

We find that defendant's assertions are not supported by the record. While it was her version of the occurrence that she, together with Walker and Frances Breitenbucher, proceeded to Partain's home to play a prank upon him at which time she intended to use a pair of cutting pliers to open a can of black spray paint and spray her own face to look like a witch, Walker testified that on the way to Partain's house in Breitenbucher's automobile "she was talking about what she would do with that paint, how bad she wanted to get a hold of him. And she said she had felt like walking up that road two or three different times, just walking up there and taking a gun and calling him out and shoot him down. Q. And she was talking about Mr. Partain? A. Mr. Partain. Q. All right, what did she say, if anything, about robbing him on this particular occasion? A. She said: 'I am going to blind him and beat him up and rob him and throw his pocketbook away.' And that is the words she said." Similarly, Sheriff Whitaker testified that after defendant was apprehended, she stated to him in the police vehicle: "I was going to spray this paint in his face, and I was going to spray it on his food in his refrigerator, and I was going to get his money."

Likewise, while it was defendant's version that she "chickened out" and did not go upon Partain's premises after getting out of the automobile, and while she contends there is no evidence to show her actual participation on the premises which culminated in Partain's firing pistol shots and being hit in the head with a stick by Walker, Walker testified otherwise: "And she said: 'Knock on the door, now.' She said: 'I cannot get one of them loose.' She said: 'Knock on the door.' I knocked on the door and I stepped back; and when I stepped back, he opened the door and

went to shooting. Q. And what? A. Went to shooting, and I thought probably he could kill her or something, and I had an old stick that I used for walking with since I had a heart attack which I have had before and I hit at the gun, and it glanced at the door and hit him. I do not know where it hit him. Q. All right, now, where was she. Where was Lucille [defendant]? A. She was on the porch right there taking them wires loose. Q. Did she have this stick in her hand? A. She had it with her when she came out of the car. . . Q. All right, Mr. Walker, now, do not say what you guess you hear hitting out there. Just say, what did you see her do, if anything, with the fuses? A. She just threw it out, and they was hitting the ground. Q. All right. A. I could see her hand as she took them loose that way. . . Q. Did she cut any wires? A. I do not know whether she cut them. I could hear them hitting the floor. Q. And this is her pliers, okay. A. I could hear them hitting the floor, the wires, I knew it was wires. And I could see her working over there."

We conclude that the evidence in its totality was sufficient to support the conviction of conspiracy to commit robbery (*Carter v. State,* 141 Ga. 308 (80 SE 995); *Bolton v. State,* 21 Ga. App. 184 (94 SE 95); *Chappell v. State,* 209 Ga. 701, 702 (75 SE2d 417)), and that *Caldwell v. State,* 227 Ga. 703 (182 SE2d 789), relied upon by defendant, is not controlling here because of factual dissimilarity.

2. While the sheriff was testifying he was asked: "Q. What is your custom when you are making an arrest, Sheriff? Or have a suspect of this sort about searching their person? A. Search them to see if they have any weapons on them that could produce death or cause bodily harm to you." Objection was made to this testimony on the ground that "police procedure has got no bearing in a criminal case," and the objection was overruled.

It is contended that "the custom and usage of the Sheriff in arrest procedures had no bearing on the issue of guilt or innocence of the defendant."

It has been held many times that evidence as to the place, manner and all circumstances connected with an arrest are admissible in a criminal case. *Henderson v. State,* 227 Ga. 68, 82 (179 SE2d 76), and citations. The custom and usage of the officer as to how an arrest is accomplished and the extent of search in connection therewith is within the ambit of the circumstances of the arrest. And "[a]lthough a witness may have no distinct and independent recollection of the details of a fact occurring in the course of the

routine of his business, he may testify, as this witness did, to his fixed and uniform habit in such cases, and state that he knows that what he did in a given transaction was in accordance with that habit . . . The probative value of such evidence is for the jury . . ." *Leonard v. Mixon,* 96 Ga. 239, 241 (23 SE 80). See also *Russell v. Pitts,* 105 Ga. App. 147 (1) (123 SE2d 708); *Interstate Life &c. Ins. Co. v. Whitlock,* 112 Ga. App. 212, 219 (144 SE2d 532). The rule has been applied in criminal cases. *Butler v. State,* 142 Ga. 286 (6) (82 SE 654). No error is shown.

3. In questioning the sheriff as to whether the defendant's statement given in the police vehicle was made freely and voluntarily, the district attorney used the term "confession" rather than "statement." However, the court granted the defense motion to rule out the term "confession"; the district attorney withdrew it; the court instructed the jury to completely disregard it, the jurors nodding their heads affirmatively that they understood the court's instruction; and the district attorney continued his questioning using the term "statement." We find no reversible error in denying a mistrial in these circumstances. *Willis v. State,* 122 Ga. App. 776 (6) (178 SE2d 737). Further, where there was acquiescence in a ruling by the court it cannot be challenged on appeal. *State Hwy. Dept. v. Willis,* 106 Ga. App. 821 (2) (128 SE2d 351); *Upshaw v. Cooper,* 127 Ga. App. 690 (1) (194 SE2d 618); *Whitaker v. Creedon,* 99 Ga. App. 228 (2) (108 SE2d 335).

4. Defendant complains of testimony of Mr. Partain relating to prior conduct of defendant when she and Partain were married and having marital difficulties. However, defendant herself volunteered information as to these matters, and we find no reversible error. *Sides v. State,* 213 Ga. 482 (4) (99 SE2d 884).

5. With reference to searching defendant's person for a weapon, the sheriff testified on cross examination by defendant: "Q. Well, you have known her all your life, have you not? A. That might have been the reason I was searching her." No objection was made to this testimony at the trial and defendant may not complain of it now. *Clare v. Drexler,* 152 Ga. 419 (5) (110 SE 176); *Nichols v. State,* 111 Ga. App. 699 (1) (143 SE2d 41).

6. Remaining enumerations of error have not been argued and are deemed abandoned. *Abrams v. State,* 223 Ga. 216 (6) (154 SE2d 443).

*Judgment affirmed. Pannell and Stolz. JJ., concur.*

ARGUED NOVEMBER 9, 1973 — DECIDED JANUARY 7, 1974.

*Walton Hardin,* for appellant.
*Clete D. Johnson, District Attorney,* for appellee.