## 56690. KIMBRELL v. THE STATE.

QUILLIAN, Presiding Judge.

The defendant was charged with the murder of James A. Williams (Jimmy). He was convicted of voluntary manslaughter and brings this appeal. *Held:*

The defendant lived with Myra Manning, who he claimed was his common-law wife, although she was married to another man. Other people living in the same house were Raymond Patterson (Ray), son of Myra Manning, and Sarah Ann Tilley (Zig), sister of Myra Manning. The victim, Jimmy Williams, had spent the last two nights there sleeping with Zig. She was pregnant.

Ray owned a "cheap TV set" which was missing a volume control knob and had to be manually turned up and down by a "paring knife" kept on top of the TV by inserting the knife into the slot for the missing control knob.

On the evening this offense occurred, Ray heard his aunt Zig call him. He went into the bedroom and Zig told him Jimmy had hit her. Ray told Jimmy he would have to leave. Jimmy "used to fancy he was somewhat of a karate expert." He was considered to be "very tough . . . Nobody wanted to fight him and he would fight people just to be [sic.] sometimes . . . Just walk up and hit somebody." These facts were known to the defendant. Earlier in the day the deceased had been "walking back and forth across the house, just making grunting sounds." Jimmy was 5 feet, 11 inches tall and weighed 160 pounds. The defendant weighed "between 130 and 135." The defendant testified that he was "terrified of" Jimmy.

At the time the incident occurred in the bedroom, the defendant was adjusting the volume of the TV which was

"a little loud because the kids had been watching it . . . [He] took the knife on top of the TV stand and turned it down . . . [He] still had the knife" when he heard Zig say "the son-of-a-bitch has gone crazy." The defendant knew that Jimmy had previously been confined in the "psycho ward" of Grady Hospital. The defendant walked into the bedroom. He testified, "I forgot I had the knife in my hand. As I walked in I saw Jimmy had his back to me and [Zig] was on the bed. Jimmy was standing in the right-hand corner of the bed. Ray was middleways of the bed and Jimmy was squared off with Ray . . . Zig explained that Jimmy had been swinging at her belly or hitting her belly trying to make her lose the baby." The defendant sent someone to call the police and asked Jimmy to leave. The defendant testified: ". . . he turned to come at me. Jimmy didn't come at me with his fist balled up like this, [No description for record.] he came with them like this. [No description.] Came swinging over and under like this, [No description.] which I've always heard and I know this is hearsay but I've heard that man that knows karate, and he had a black belt . . . I'm normally scared of the man because he wouldn't talk to nobody but Zig . . . Well I had forgotten about having a knife in my hand. I wasn't conscious of having the knife in my hand from the time I entered the room because I was scared of the man and I knew I didn't want to fight him. I was trying to think of a way I could get him out. So when he came at me I figured if he was going to hurt my family I've got to try. So I just started swinging . . . I remembered my hands being on his side and I pushed back off of him like that, [No description] and I still didn't realize I had the knife in may hand. I don't remember stabbing him at all. But when I pushed back off him like that, he said 'stab me again you son-of-a-bitch. Stab me again.' I didn't know what he was talking about . . . he reached out and picked me up by the arms . . . like I was a rag doll and tossed me in the kitchen" where he fell against Ray and knocked him down.

Jimmy ran from the house and the defendant and Ray pursued him. The defendant stopped at the front steps. He said: "I still didn't realize the knife [was] in my hand even at that time." When he returned to the house he "walked through the kitchen and that's when I realized I

had the knife in my hand."

The defendant, in writing, requested a charge on "misfortune or accident" under Code Ann. § 26-602, which provides: "A person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, or intention, or criminal negligence." This request was refused. The court charged on "self defense" and the use of force to prevent or terminate "unlawful entry into or attacks upon a habitation."

It is evident from the testimony of the defendant that he relied upon the defense of "misfortune or accident" in that he testified that he had no knowledge of the use of a knife. See *Swint v. State,* 203 Ga. 430, 432 (4) (47 SE2d 65).

There are three lines of cases relating to an accused's use of the defense of misfortune or accident. In *Patterson v. State,* 181 Ga. 698, 709 (184 SE 309), the Supreme Court held: "As this was *one of the main theories* of the defense, and was involved by the evidence, it was error to omit to charge the law relative thereto, with or without a request." (Emphasis supplied.) Molnar, Ga. Crim. Law 64 (2d Ed.), § 2-2.

In *Harris v. State,* a "whole-court" case, 145 Ga. App. 675 (244 SE2d 620), this court reaffirmed the holding of *Glaze v. State,* 2 Ga. App. 704 (58 SE 1126) which stated: " 'It seems to have been uniformly held by the Supreme Court that the omission to submit the *controlling issue* in the case to the jury was such an error as demanded the grant of a new trial . . . Where there is only *one* defense on which a party relies, to fail to instruct the jury as to this defense . . . virtually withdraws that defense, and is, in effect, to direct a verdict.' " (Emphasis supplied.)

*Harris v. State,* 145 Ga. App. 675, supra, 677, also stands for the rule that "the trial court erred in failing to charge on *the appellant's sole defense* of misfortune or accident." (Emphasis supplied.) See also *Pollard v. State,* 236 Ga. 587, 589 (244 SE2d 420). Thus, whether we categorize defendant's defense as his *sole defense, controlling issue,* or one of his *main* (or principal) *theories of defense,* the result we must reach is the same — if the issue is raised by the evidence.

A defendant's testimony is sufficient to raise a jury question. *Dotson v. State,* 144 Ga. App. 113, 114 (240 SE2d 238). The testimony of the defendant in the instant case dealt solely with his lack of knowledge of possession of the knife in his hand. Regardless of the belief of this court as to the viability of that defense, and regardless of what the trial judge thought of the credibility of that defense, the jurors are the exclusive finders of fact and judges of credibility of witnesses. *Barnes v. State,* 57 Ga. App. 183 (2) (194 SE 839). A trial judge invades the province of the jury when he withdraws an accused's sole or principal defense from the jury by his determination that it is unbelievable.

We are aware that this court has held that where a defendant's explanation for a crime "is highly implausible and utterly beyond belief" it is not error to refuse to charge upon that issue. *Treadwell v. State,* 129 Ga. App. 573, 574 (200 SE2d 323). However the cases are legion in the jurisprudence of this nation that "[t]he right of the jury to settle disputed issues of fact is supreme and exclusive." *Charles v. Brooker,* 1 Ga. App. 219 (58 SE 218). As our Supreme Court has held: "An act producing consequences will not be presumed to be criminal, and it is for the trier of fact to determine whether such act is criminal." *Kramer v. State,* 230 Ga. 855, 856 (199 SE2d 805). A trial judge should be extremely cautious and hesitant in refusing to submit an accused's sole or principal defense to a jury for resolution upon the grounds that such defense, raised by a defendant's testimony "is highly implausible and utterly beyond belief." When a judge gets in the jury box to decide issues of fact he should not be too surprised when an appellate court advises him that "it is for the trier of fact to determine whether such act is criminal." *Kramer v. State,* 230 Ga. 855, 856, supra.

We find "[t]he defendant's testimony was sufficient to raise a jury question as to whether the physical encounter was an accident or an [offense] . . . It was harmful error for the court to fail to give any charge to the jury on accident . . ." *Dotson v. State,* 144 Ga. App. 113, 114, supra.

*Judgment reversed. Webb and McMurray, JJ.,*

*concur.*

SUBMITTED OCTOBER 16, 1978 — DECIDED
DECEMBER 1, 1978.

*Louise Hornsby,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, R. David Petersen, Carole E. Wall, Assistant District Attorneys,* for appellee.