62969, 62970. SAMS v. GAY; and vice versa.

BANKE, Judge.

The plaintiff, J. E. Gay, brought this suit against the administrator of the estate of William A. Robinson to recover for property damage caused by a fire which partially destroyed a house he and Robinson had shared in a community called Smokerise. Robinson was killed in the blaze. Recovery is sought on the basis of the decedent's alleged negligence in starting the fire as well as his failure to carry out an alleged undertaking to secure property insurance naming both of them as beneficiaries. Although the

decedent did purchase a homeowner's insurance policy, it was issued in his name only. Gay and Robinson had purchased the house jointly as co-tenants; however, it was determined in a previous action that Gay had made all the payments and was therefore the beneficial owner of the entire property. See *Weekes v. Gay,* 243 Ga. 784 (256 SE2d 901) (1979).

At the close of the plaintiff's evidence, the trial court directed a verdict for the defendant as to the existence of the alleged agreement or undertaking to obtain insurance; however, at the close of all the evidence, the court directed a verdict in the plaintiff's favor as to the negligence claim. The amount of damages had been stipulated and was not at issue. The defendant filed an appeal and the plaintiff a cross appeal.

The plaintiff presented the testimony of an expert in fire investigations who was of the opinion that the fire had started in the den and had not been electrical in origin. He was unable, however, to offer an opinion as to what did cause the fire. The decedent's body was discovered in a utility room next to the kitchen. The plaintiff was at work when the fire started, and there was no indication that any other person had been on the premises. The plaintiff's theory was that the decedent had fallen asleep in an intoxicated condition while holding a lighted cigarette.

Evidence of intoxication was provided by expert testimony that the decedent's blood-alcohol content upon autopsy was .15 percent. This expert further testified that a person of the decedent's weight would have to consume a quantity of alcohol equivalent to that contained in seven or eight beers over a period of approximately an hour to achieve such a level and that the average person with a blood-alcohol content of .15 percent would tend to be drowsy and to suffer physical and mental impairment. In support of the theory that the decedent had been smoking and that he had passed out with a lighted cigarette, the plaintiff testified that it was the decedent's custom and habit to chain-smoke while drinking and that "many times" he had passed out under such circumstances while holding a lighted cigarette and had burned holes in the furniture. *Held:*

1. The law in Georgia regarding the admissibility of evidence of a person's habits and customs is, to some extent, in conflict. According to Professor Agnor, evidence that a person habitually did a particular thing in a particular manner is admissible to prove that the person acted in accordance with that habit on a given occasion. See Agnor's Georgia Evidence § 10-18, p. 192, citing *Leonard v. Mixon,* 96 Ga. 239 (23 SE 80) (1895); *Central of Ga. R. v. Brower,* 106 Ga. App. 340 (7) (127 SE2d 33) (1962); *Daniel v. State,* 130 Ga. App. 548 (203 SE2d 736) (1974). On the other hand, it has been held for many years

that a person's habit of using or failing to use due care in performing a particular task is not admissible to prove that he did or did not act negligently on a particular occasion. See *Atlanta & W. P. R. Co. v. Smith,* 94 Ga. 107 (3) (20 SE 763) (1894); *Hines v. Bell,* 104 Ga. App. 76 (3) (a) (120 SE2d 892) (1961). The conflict between these two principles arises where the act in question is inherently negligent, such as, for example, the act of going to sleep with a lighted cigarette.

Where the person whose negligence is at issue dies as the result of the alleged negligence, there is authority for allowing the evidence. In *Stripling v. Godfrey,* 143 Ga. App. 742 (2), 742-743 (240 SE2d 145) (1977), it was held that while "evidence of a decedent's negligence in previous isolated instances is not admissible as bearing on negligence at the time of death . . ., evidence of a party's habitual carelessness, recklessness, or negligence in performing particular acts would be admissible where death ensued from such acts." The decedent in *Stripling* had been killed by a passing vehicle when she walked onto a highway in an intoxicated condition. The testimony at issue was that she had a habit of jumping in front of passing vehicles when intoxicated.

In the case before us now, the testimony that the decedent habitually chain-smoked while drinking and that on many such occasions he had passed out with a cigarette in his hand must certainly be considered relevant to any inquiry into what caused the fire. As previously indicated, there was clear evidence that the decedent was intoxicated at the time the fire began, the only expert to testify was unable to offer a "natural" explanation for the fire's origin, and, from all appearances, the decedent was at home alone at the time the fire began. In view of all these factors, we hold that the testimony concerning the decedent's smoking and drinking habits was properly admitted pursuant to *Stripling v. Godfrey,* supra.

2. The trial court correctly denied the defendant's motion for directed verdict on the issue of negligence but erred in granting the plaintiff's motion for directed verdict. The evidence, though circumstantial, was sufficient to go to the jury on the basis of the doctrine of *res ipsa loquitur.* "It is generally stated that for *res ipsa loquitur* to apply the injuring instrumentality must be in the exclusive control of the defendant; if there is an intervention by anyone else which could produce the injury, the doctrine does not apply. [Cits.] . . . [However], [a]ccording to Harper & James, '[T]he courts do not generally apply this requirement as it is literally stated, although mechanical insistance upon it has brought about an occasional restrictive result. The requirement as it is generally applied is more accurately stated as one that the evidence must afford a rational basis for concluding that the cause of the accident was

probably "such that the defendant would be responsible for any negligence connected with it." That does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door.' " *Smith v. Telecable of Columbus,* 142 Ga. App. 535, 536 (236 SE2d 523) (1977).

The evidence in this case afforded a rational basis for concluding that the house would not have burned in the absence of negligence and that the decedent was responsible for any negligence which may in fact have occurred. However, the evidence certainly did not demand such a conclusion. Accordingly, while the trial court was correct in denying the defendant's motion for directed verdict, he erred in directing a verdict for the plaintiff.

3. The evidence was also sufficient to withstand a motion for directed verdict on the breach of contract claim. At the time the decedent allegedly undertook to obtain insurance for the plaintiff, the now-repealed "Dead Man Statute" (former Code Ann. § 38-1603 (1)) was in effect, rendering the plaintiff incompetent to testify on the issue. However, the existence of the agreement could be inferred from the testimony of the real estate broker who arranged the purchase of the house. This witness testified that at a meeting with the plaintiff and the decedent prior to the closing, he instructed them that they "must" procure property insurance and that the policy "must" read exactly as the title was to be taken, i.e., in both their names. Although the broker could not recall which of the two actually undertook to obtain the policy in response to these instructions, there is no question it was the decedent. It may logically and reasonably be inferred from this evidence that the decedent did in fact agree and undertake to obtain insurance coverage on behalf of the plaintiff. Consequently, it was error to grant the defendant's motion for directed verdict on this issue.

*Judgment reversed and case remanded. Deen, P. J., and Carley, J., concur.*

DECIDED JANUARY 4, 1982 —
REHEARING DENIED JANUARY 22, 1982 IN CASE NO. 62969 —

*Robert C. Semler, Diane Q. House, R. Phillip Shinall III,* for appellant.

*Thomas F. Choyce,* for appellee.