## 45087. DELAY v. THE STATE.
(367 SE2d 806)

WELTNER, Justice.

Otis Delay shot and killed Willie C. Gray with a rifle. Delay was found guilty of felony murder by a jury and was sentenced to life in prison.[1] From the evidence the jury could have found that Gray, Delay's neighbor, had been in Delay's house for about fifteen minutes. When Gray left and started walking toward his house, Delay called to him. Gray turned and started back toward Delay. Delay then shot Gray, who fell to the ground in front of Delay's house. Delay then said to some neighborhood people: "Not none of you all saw me, better not come in my yard." The police arrived shortly thereafter. One of the officers saw Gray lying on the ground, and determined that he was still alive. A large group of neighbors collected, and shouted to the officer that Delay had shot the man, and was in his house.

Police officer John Freer went to Delay's front door with his weapon drawn. He heard someone inside the house walk toward the front door and waited until the door was partially opened and then pushed the door inward. He placed his weapon close to Delay's head, ordered him to the floor, and handcuffed him. The officer then was joined by other police. While Delay was still on the floor a detective arrived. He saw Delay handcuffed and on the floor, but could see no

---

[1] The crime took place on June 14, 1986, and Delay was indicted on August 21, 1986. A verdict of guilty was returned on January 16, 1987, and he was sentenced the same day. His motion for new trial was filed on February 13, 1987. The court reporter certified the trial transcript on March 18, 1987, and the motion for new trial was denied on July 13, 1987. The notice of appeal was filed August 10, 1987. The clerk of the trial court certified the record on August 10, 1987, and it was docketed in this court on October 13, 1987. The appeal was argued on January 11, 1988.

weapon. He asked the group in general: "Where is the weapon?" Delay answered that he would take the officers to it, and led the officers to a bedroom, where the rifle was seen in plain view on a bed.

Delay was not advised of his *Miranda* rights at the time of his arrest. On the way to the police station he asked the officer transporting him: "Why am I being arrested?" The officer answered that he assumed Delay was being charged with murder. Delay asserted: "I don't think what I did was wrong. I told the guy twice to leave."

1. From the evidence in this case, a rational trier of fact could have found Delay guilty beyond a reasonable doubt of felony murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Delay contends that his arrest was without a warrant and also without probable cause, and that the rifle seized from his home should not have been admitted as evidence.

(a) The arrest was without warrant, but was *not* without probable cause.

A "warrantless arrest" is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense. [Cit.]

*Callaway v. State*, 257 Ga. 12, 13-14 (354 SE2d 118) (1987).

(b) Delay contends that the warrantless search that yielded the rifle was constitutionally impermissible, and that the rifle should have been suppressed as illegally seized evidence. In *Mincey v. Arizona*, 437 U. S. 385, 392-393 (98 SC 2408, 57 LE2d 290) (1978) the court stated:

[W]hen the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. [Cit.] The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. [Cit.] And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. [Cit.]

See also *Hatten v. State*, 253 Ga. 24, 25 (315 SE2d 893) (1984) and *Gilreath v. State*, 247 Ga. 814, 821 (279 SE2d 650) (1981). There was no error.

3. Delay asserts that the two statements that he made to the police before he was advised of his *Miranda* rights should not have been

admitted into evidence.[2]

These contentions must be viewed in the light of the circumstances of this case. Delay shot Gray in the presence of witnesses, who saw him return to his house with a rifle. Delay testified that he shot Gray in defense of self and home.

(a) The rifle was located upon a bed in a room near that in which Delay was held. Obviously, it would have been discovered in the course of even the most cursory search of the house. *Nix v. Williams*, 467 U. S. 431, 448 (104 SC 2501, 81 LE2d 377) (1984) states:

> [W]hen. . .the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible.

Because the rifle inevitably would have been discovered independently of Delay's statement, there was no requirement that it be suppressed, even assuming a *Miranda* defect.

(b) That does not resolve the whole inquiry concerning the first statement, however, as the statement itself was admitted into the evidence.

However, in view of the circumstances, we need not determine whether there was a *Miranda* defect, as the statement admitted was not inculpatory. Indeed, all it could stand for is that Delay knew the location of the rifle, which was not inconsistent with his defense. Any error in admitting his statement was harmless.

(c) *Miranda v. Arizona*, 384 U. S. 436, 444-445 (86 SC 1602, 16 LE2d 694) (1966), states:

> By custodial interrogation, we mean questioning *initiated* by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. [Emphasis supplied.]

The second statement, while "custodial," was not *initiated* by police officers. Rather, it was Delay's response to the officer's answer to his own question. There was no error.

4. Delay claims his defense was unfairly prejudiced by reason of prosecutorial misconduct in the misnaming of a witness for the state. The correct name of the witness was Inman Rucker, but when the district attorney first disclosed the identity of this witness to Delay's attorney the name was given as "Rucker Inman." However, from the

---

[2] The statements were: "I'll show you where [the rifle] is," and "I don't think what I did was wrong. I told the guy twice to leave."

testimony in the record it is clear there was no intent on the part of the district attorney to mislead Delay or his attorney or to prevent Delay's attorney from making contact with the witness. Rucker, who at one time rented a room from Delay, simply did not want to talk to Delay's attorney. At any rate, the trial judge provided ample time for Delay's attorney to interview Rucker before Rucker took the stand.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 13, 1988.

*Melvin S. Nash,* for appellant.

*Thomas J. Charron, District Attorney, Thomas A. Cole, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.