A98A0932. CASILLAS v. THE STATE.
(505 SE2d 251)

BLACKBURN, Judge.

Joe M. Casillas was convicted of involuntary manslaughter and possession of a firearm during the commission of a crime in connection with the shooting death of Martin Leonard Wright. He appeals, asserting numerous errors. For the reasons discussed below, we affirm.

Viewed in the light most favorable to the verdict, the evidence at trial revealed the following. Corporals Ted Hatch and Timothy Lawler of the Savannah Police Department were dispatched to the scene of a reported shooting. At the scene, Corporal Hatch saw Casillas standing between two vehicles, with Wright, the victim, lying on the ground with a bullet wound between his eyebrows. Casillas told Hatch that he and a friend, Henry Ruiz, had been upstairs drinking beer with Wright, when Wright "just grabbed the gun and shot himself in the head." Casillas said that he and Ruiz dragged the victim down the stairs and "were going to attempt to take him to the hospital, but that for some reason or other, they changed their mind and called the police."

Corporal Lawler heard defendant state to Corporal Hatch that "the victim had taken the gun and shot himself in the head." Lawler went upstairs into the apartment and found Henry Ruiz standing

inside the doorway. Lawler noticed a semi-automatic weapon on the table. A spent shell casing and a live round of ammunition were recovered from the apartment floor.

Henry Ruiz testified that he served in the same platoon where defendant was a staff sergeant in the 75th Ranger Battalion, at Hunter Army Airfield. On the day in question, Casillas and Ruiz each purchased a 12-pack of beer. At around 8:00 p.m., they left defendant's apartment and went to a bar, where they spent a couple of hours drinking. They went to another bar around midnight, where Ruiz met the victim, Martin Wright, who was in a wheelchair. Ruiz and Casillas bought the victim some beer. They stayed until closing time, at which point the three men returned to defendant's apartment where they watched a videotape about the Rangers and drank more beer. In Ruiz's opinion, all three of them were under the influence of alcohol.

According to Ruiz, when the victim told Casillas that he did not believe Casillas' stories of combat experience, the two of them argued. At some point, Casillas went to his bedroom and returned with a pistol and a bag of ammunition.

Ruiz testified that the victim jokingly said that "he'd rather be dead" because he could no longer have intercourse because he was paralyzed from the waist down. According to Ruiz, Casillas then said that "he could assist him in that, he had a pistol nearby. And he [the victim] said, put it in my mouth. So the gun was inserted in [the victim's] mouth [by Casillas], jokingly." This episode was repeated. Ruiz testified that he "took the pistol and took all the rounds out of it." Henry Ruiz never saw the victim handle the gun by himself, before he left the dining room area and went to try to sleep on a couch. But an argument ensued when the beer ran out. The victim "was being kind of obnoxious and told [Casillas] to put the pistol back in his mouth. And the Defendant did." Ruiz testified that he saw defendant reload the weapon, stand up with "[b]oth hands on the pistol grip," and point the weapon at the victim from a distance of three or four feet. Ruiz did not actually see Casillas fire the weapon, because Ruiz "was resting [his] head between [his] arms, just exhausted." The victim was shot in the center of the forehead. Ruiz believed defendant washed his hands thereafter.

Ruiz testified that, although his "[f]irst instinct was to call EMS or take him to the hospital or something," he and Casillas "started to roll [the victim] down the stairs, and as [they] got to the doorway, . . . [the victim's] body fell out of the wheelchair and fell down the flight of stairs." Casillas eventually summoned the police. He told Ruiz to say that the victim "shot himself in the forehead," so Ruiz initially told police at the scene "that [the victim] had self-inflicted himself." However, Detective Aaron L. Quarterman testified that the

location of the spent shell casing on the floor indicated the shot was not fired by the victim: "If [that] man shot himself, that shell casing's not supposed to be across the room . . . , it's supposed to be in the opposite direction."

William Medart, M.D., performed the autopsy on the victim. In his opinion, "[t]his young man died as a result of a gunshot wound which entered his forehead a little bit above the level of between the eyes and which traversed the entire brain and exited . . . from the rear of the brain." Dr. Medart "did not notice evidence of stippling[,] . . . the term used to refer to small black either particles or burns around an entrance wound which are indicative of the skin being hit by hot black powder." Roger Wayne Parian, the director and firearms examiner for the Division of Forensic Sciences at the Savannah branch of the Georgia Bureau of Investigation Crime Laboratory, testified that the spent shell casing was fired from the .40 caliber semi-automatic weapon found in the apartment. Parian testified that "[t]he only way [he] could make [the weapon] discharge was by pulling the trigger either in the single- or double-action mode." In the absence of stippling, Parian opined "the muzzle to target distance had to be greater than twenty-four inches at least."

In a custodial statement, defendant essentially corroborated Ruiz's version of events as to the extended drinking and playing with the weapon. Defendant stated he "took out the magazine, cleared the weapon, and everybody started playing around with the gun, squeezing it. The gun was clear. . . . We continued drinking. . . . And I still thought the weapon was clear. But I had it in my hand. I thought it was pointed above his head. I thought it was pointed above his head. . . . I thought I was pointing it away from his head at a safe distance. I wasn't intentionally knowing that the gun was loaded. Somebody . . . must have loaded it. . . . I squeezed the trigger, not knowing the gun was loaded, and shot him in the head. . . . It was an accident. We were just trying to show [the victim] a good time, 'cause he was crippled, you know."

After Ruiz testified, Detective Quarterman testified about a custodial statement made by Ruiz. In this statement, Ruiz made no mention of unloading the weapon himself. Rather, he told Detective Quarterman the victim "was acting very immature. At this time, Sgt. Casillas had ejected all the rounds in the weapon, and they fell on the floor. . . . At this time, the gun was then . . . again put in his mouth. Both of them did it. It was empty. Sgt. Casillas had pulled the trigger while the gun was in his mouth. During this time, there was an argument on fraternization between privates and NCO's. . . . At this time, sergeant was putting the rounds back in the clip. . . . Sgt. Casillas had put the weapon in front of [the victim's] face, and it was loaded at this time and off safe, because I remember hearing it go off

safe, and [the victim] lunged for the weapon, and they kind of struggled with it. One of the rounds went into [the victim's] forehead. Sgt. Casillas had control of the weapon and [the victim] lunged for it, and the round went off in his forehead."

Casillas took the stand and testified that, just before the fatal shot, he had put the clip back into the weapon. However, he testified that the gun would not fire unless there was a round in the chamber, and that he was positive there was no round in the chamber unless Ruiz had loaded one. Casillas testified that the victim "was reaching for [the weapon]. . . . I believe he put his hand on the weapon, try to pull it, tried to get it out of my hand to look — to — to grab it. And the gun went off. It just happened so quick." He testified that when the gun discharged, he cursed and asked Ruiz who had loaded the gun. Defendant denied he had been negligent when handling the gun himself because he believed it was unloaded.

The jury acquitted defendant of charges of murder (Count 1), felony murder (Count 2), and involuntary manslaughter during the commission of the unlawful act of pointing a pistol at another (Count 3) but found him guilty of involuntary manslaughter during the commission of the unlawful act of reckless conduct (Count 4) and possession of a firearm during the commission of a crime (Count 5). Defendant's motion for new trial was denied, and this appeal followed.

1. Casillas contends that the trial court erred in excluding evidence regarding prior instances of reckless behavior on the part of the victim. This evidence consisted of the testimony of a police officer that Wright had, on several occasions in the past, been found in the early morning hours intoxicated and sitting in his wheelchair in the road, creating a dangerous condition.

The general character and specific conduct of the victim on other occasions are not generally relevant or admissible. The trial court has broad discretion in determining admissibility in such matters. See *Moss v. State*, 206 Ga. App. 310 (1) (425 SE2d 386) (1992) (" 'the admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion' "). See also *Causey v. State*, 215 Ga. App. 723, 724 (3) (452 SE2d 564) (1994).

In *Causey*, supra, the defendant appealed the trial court's exclusion of evidence of the victim's *prior* drug use, contending that such evidence was the core of his defense. We held that the trial court did not abuse its discretion in limiting the testimony of drug use by the victim to that which occurred on the night of the incident, where the defendant contended the victim's injuries were caused by a cocaine-induced seizure.

In this case, Casillas also contends at one point that the victim's

death was the result of his own conduct and that the excluded prior conduct would establish this fact. This case is similar to *Causey* and by the same rationale, the trial court did not err in excluding the testimony concerning prior conduct of the victim.

Here, testimony regarding the victim's reckless behavior on the night in question was allowed. The jury heard the defense's testimony that the victim said he wished he was dead and the victim's commands that the defendant put the gun in the victim's mouth. Therefore, the jury did consider whether the victim's recklessness on the subject evening contributed to his death. The jury also heard the other evidence presented and was free to resolve all conflicts in the evidence and to determine issues of credibility. See *Causey*, supra (evidence of prior drug use irrelevant where evidence of drug use on the night of the incident was introduced). See also *Johnson v. State*, 221 Ga. App. 267, 270 (3) (471 SE2d 46) (1996) (exclusion of prior conduct evidence did not prevent defendant from presenting a full defense and testifying as to victim's conduct on the subject date).

The trial court did not abuse its discretion in disallowing evidence of the victim's past conduct, see OCGA § 24-2-2; therefore, we affirm Casillas' conviction on this ground. While the trial court did not err in excluding the subject testimony, such ruling, even if it had been error, would have been harmless under the facts of this case. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

2. Casillas contends the trial court erred in allowing Detective Quarterman to testify regarding Ruiz's custodial statement. Casillas contends that such statement was used for impeachment purposes, and that Ruiz therefore should have been confronted with such statement before its introduction through Detective Quarterman's testimony. See OCGA § 24-9-83.

As part of the State's case, Detective Quarterman read the statement given to him by Casillas to the jury. It read in part, "Q. Now did the defendant — well, I believe you've already testified that he made a statement, is that correct? A. Yes, sir. Q. Would you for the jury read the statement of the defendant[?] A. He advised okay, it was me, Martin, and Henry Ruiz coming back from Classy Cat Club. All three of us were drinking at Classy Cats. Then the club closed, so we decided to go to my apartment and drink some beers, 'cause I had some more beers over there. We got to my apartment. We went inside. We were sitting at the table drinking beer. We decided to see the gun that I had. It was a Smith and Wesson model 411, .40 caliber, black in color. So I grabbed the gun, took out the magazine, cleared the weapon, and everybody started playing around with the gun, squeezing it. The gun was clear. Like I said, we were — we was fooling around with it. Then we started drinking some more. The gun was laying on the table. We continued. We continued drinking, and I

was going back and forth to the restroom and recording some music. And I still thought the weapon was clear. But I had it in my hand. I thought it was pointed above his head. I thought it was pointed above his head. Like I said, I thought it was clear. I thought I was pointing it away from his head at a safe distance. I wasn't intentionally knowing that the gun was loaded. Somebody must have — like everybody was fooling around with the pistol. So during the time it was laying on the table, somebody must have loaded it. I squeezed the trigger, not knowing the gun was loaded, and shot him in the head. I shot Martin. So once I — so once I shot him in the head, we tried to take him to the hospital, and it didn't work. We called the cops, called the police. And like I said, I didn't know the weapon was loaded."

Contrary to the defendant's assertion, the State offered Ruiz's statement not for impeachment purposes but as a prior consistent statement. Under *Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998), a witness's prior consistent statement is admissible where "(1) the veracity of [the] witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination." It appears that these elements were met in this case, and that Ruiz's statement was therefore properly admitted. Furthermore, even if the statement were seen as impeachment evidence, any error by the trial court in failing to follow the proper procedure was harmless and would not support a reversal of Casillas' conviction.

3. Casillas contends the trial court erred in refusing to give his requested charge on mistake of fact. Casillas contends that, because he was unaware that a round of ammunition was in the gun's chamber, he was mistaken in his belief that the gun could not discharge. However, at trial Casillas testified that the victim reached for the gun and grabbed his hand as he was getting up, which caused the gun to discharge. At trial, Casillas consistently maintained that the victim was accidentally shot. Furthermore, Casillas specifically denied pointing the pistol at the victim and squeezing the trigger.

"One cannot deny committing an act, while at the same time argue he committed the act by mistake. Accordingly, the evidence adduced at trial clearly did not authorize a charge on mistake of fact, and the trial court was correct in refusing to give the charge." (Punctuation omitted.) *Williams v. State*, 221 Ga. App. 296, 297 (1) (471 SE2d 258) (1996).

4. Casillas contends the trial court erred in denying his motion to suppress physical evidence such as the weapon, shell casing, and bloody towel seized in plain sight from his apartment during a warrantless search immediately after police arrived at the scene and discovered the victim's body. This contention is without merit.

"When the police come upon the scene of a homicide they may

make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." (Citations and punctuation omitted.) *Delay v. State,* 258 Ga. 229, 230 (2) (b) (367 SE2d 806) (1988). The trial court did not err in denying Casillas' motion to suppress.

5. Casillas contends that he is entitled to a new trial because the State failed to disclose the existence of an alleged deal between the State and Henry Ruiz, pursuant to which Ruiz would not be prosecuted in exchange for his testimony against Casillas. However, as the transcript of the motion for new trial hearing has not been included in the record on appeal, Casillas has failed to show that any such deal in fact existed. Accordingly, we cannot say that the trial court erred in denying the motion for new trial on this ground.

*Judgment affirmed. Andrews, C. J., Johnson, P. J., Smith, Eldridge, JJ., and Senior Appellate Judge Harold R. Banke concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent from the judgment of affirmance. In my view, defendant was entitled, under this Court's precedent, to put up evidence of the victim's pattern of reckless behavior while under the influence of alcohol, as an exception to the general rule that the character of the victim is not legally relevant. It is further my opinion that the erroneous exclusion of this relevant and material evidence mandates reversal of defendant's convictions for involuntary manslaughter during the commission of the unlawful act of reckless conduct and possession of a firearm during the commission of a crime, with direction to admit such evidence upon any retrial. Since the majority is unable meaningfully to distinguish, and is unwilling to follow or overrule, the applicable and binding precedent of *Carswell v. State,* 171 Ga. App. 455, 459 (4) (320 SE2d 249), overruled in part on other grounds, *Adcock v. State,* 260 Ga. 302 (392 SE2d 886), I respectfully dissent.

In addition to the facts recited by the majority, I note the following: Basic safety instructions about using a nine-millimeter semi-automatic pistol include "never point a loaded gun at somebody. Never have your finger in the trigger well unless you intend to shoot. Make sure your weapon's on safe. Common sense characteristics." But Henry Ruiz observed some dangerous horseplay with defendant's weapon. Defendant took the stand and testified it was standard practice that he "kept rounds in the clip [of his weapon], but no

rounds in the chamber[, explaining that for] a semi-automatic, you need a round in the chamber to have it work. It's like the keys to the car. Without the round in the chamber, it's not going to [fire]." Defendant "was very positive [there was no round in the chamber, because that is] the way [he] always leaves them. . . . Not unless when he was . . . looking at it, [Henry Ruiz] loaded one in the chamber." When the gun discharged, "[f]irst thing [defendant] asked him [Henry Ruiz] was who loaded it. [Defendant] used the F word. [He] said, who loaded the damn gun. . . ." Immediately preceding the discharge, defendant "had just put the clip back in. . . . He [the victim] was reaching for it. . . . I believe he put his hand on the weapon, try to pull it, tried to get it out of my hand to look — to — to grab it. And the gun went off. It just happened so quick. . . ." Defendant agreed it is "dangerous to be drinking and handling a loaded firearm, . . . but if it's not loaded, [defendant] didn't see — if you know what you're doing, no — no threat to it if you know what you're doing. . . . [E]ither [defendant] or Mr. Ruiz or [the victim] would have had to pull [the] slide back and push it forward to load a round in that chamber." "If he [Henry Ruiz] don't . . . know what he's doing, he could leave a round in that chamber." Defendant denied he had been negligent when handling the gun himself because "[i]t was unloaded as far as [he was] concerned."

The jury acquitted defendant of charges of murder (Count 1), felony murder (Count 2), and involuntary manslaughter during the commission of the unlawful act of pointing a pistol at another (Count 3) but found him guilty of involuntary manslaughter during the commission of the unlawful act of reckless conduct (Count 4) and possession of a firearm during the commission of a crime (Count 5).

1. Defendant proffered the testimony of Corporal Ted Hatch of the Savannah Police Department indicating that a number of "officers on the southside were familiar with [the victim] through prior dealings with him [and that] on at least four or five occasions, [Corporal Hatch] found him in the early morning hours, . . . between midnight and about 4:00 A.M., in [his] black wheelchair, out in the road, intoxicated." The victim was "obstructing traffic [and posed] a danger to traffic and to himself." Defendant argued this was proof of a pattern of reckless behavior on the part of the victim. The trial court granted the State's motion in limine to exclude this evidence of the victim's past contact with the police, and this evidentiary ruling is defendant's second enumeration of error.

(a) "[T]he Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Any evidence is relevant which logically tends to prove or disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant."

(Citations and punctuation omitted.) *Snelling v. State*, 215 Ga. App. 263 (1), 265 (1) (b) (450 SE2d 299). Accord *Moss v. State*, 206 Ga. App. 310 (1) (425 SE2d 386). Since their inception, the appellate courts of Georgia stand "pledged, by . . . past history, to abolish, to the extent of [their lawful] power, all exclusionary rules which shut out any fact from the Jury which may assist them in the ascertainment of the truth of the issue committed to their trial and decision." *Haynes v. State*, 17 Ga. 465, hn. 6 (1854). Accord *Williams v. State*, 126 Ga. App. 302 (1), 303 (190 SE2d 807). It is well settled that the victim's character, good or bad, is generally irrelevant and inadmissible in a murder trial. *Wiseman v. State*, 249 Ga. 559, 561 (6) (292 SE2d 670). "There are several circumstances, however, in which evidence reflecting the victim's character is [nevertheless] admissible." Milich, Ga. Rules of Evidence, § 11.5, p. 120 (1995). In my view, evidence that the victim repeatedly engaged in reckless behavior while under the influence of alcohol is logically relevant to prove defendant's claim that the victim grabbed for defendant's hand (in order to place the pistol in his own mouth), at which point the weapon discharged. Contrary to the ruling of the trial court in the case sub judice, that any testimony regarding a pattern of habitual reckless behavior should be excluded, I "think evidence of [the victim's] 'hazardous habit was relevant to a factual consideration of whether [recklessness] on (his) part contributed [in any way] to (his) death.' [Cit.]" *Carswell v. State*, 171 Ga. App. 455, 459 (4), 460, supra. I cannot say it is highly probable that the error in excluding this relevant evidence did not contribute to the jury's verdicts. Consequently, the judgment of conviction for involuntary manslaughter via reckless conduct (Count 4) and possession of a firearm during the commission of a crime (Count 5) must, in my view, be reversed. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869); *Snelling v. State*, 215 Ga. App. 263 (1), 266 (1) (c), 267, supra; *Carswell v. State*, 171 Ga. App. 455, 459 (4), 460, supra.

(b) "The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court *shall bind all courts* except the Supreme Court *as precedents*." (Emphasis supplied.) Art. VI, Sec. V, Par. III, Ga. Const. of 1983. "[T]he older decisions of this court *are binding on this court* until reversed or overruled by the Supreme Court or overruled by this court. . . ." (Emphasis supplied.) *McKibben v. State*, 88 Ga. App. 466, 470 (1), 474 (77 SE2d 86). Regrettably, the majority does not acknowledge exceptions to the general evidentiary rule stated, does not attempt to distinguish the applicable and binding precedent of *Carswell v. State*, 171 Ga. App. 554, 559 (4), supra, nor does it propose to overrule the same.

2. The third enumeration contends the trial court erred in refusing to give defendant's written request to charge on mistake of fact. I agree.

"A person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of fact which, if true, would have justified the act or omission." OCGA § 16-3-5. Since defendant was acquitted by the jury of murder, felony murder, and involuntary manslaughter by pointing a gun, the underlying crime supporting the remaining involuntary manslaughter charge is reckless conduct. This is where: "A person . . . causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. . . ." OCGA § 16-5-60 (b).

"Mistake of fact is a defense to a crime to the extent that the ignorance of some fact negates the existence of the mental state required to establish a material element of the crime. [Cit.]" *Jones v. State*, 263 Ga. 835, 837 (2), 839 (439 SE2d 645). In the case sub judice, there is nothing to contradict defendant's explanation that the semi-automatic pistol would not fire unless and until a round was chambered. Should the jury accept defendant's testimony that he consciously believed the weapon was not loaded, i.e., no round was chambered (even though a fully loaded clip had been inserted) when he aimed toward or above the victim's head, that circumstance would be relevant and material to whether defendant consciously disregarded a substantial and unjustifiable risk of harm constituting a gross deviation from the applicable standard of care. The trial court's charge on misfortune or accident, OCGA § 16-2-2, does not itself adequately address this possible view of the evidence. In *Adcock v. State*, 260 Ga. 302, supra, the Supreme Court of Georgia disapproved of holdings in *Abelman v. State*, 185 Ga. App. 278, 279 (2) (363 SE2d 764) and *Carswell v. State*, 171 Ga. App. 455, 460 (5), supra, as well as the holding in *Adcock v. State*, 194 Ga. App. 627 (391 SE2d 438), that when mistake of fact is not the sole defense, as it was not there, it is not error to refuse to charge. Consequently, the refusal to charge mistake of fact can constitute reversible error even when it is not the sole defense. *Adcock v. State*, 260 Ga. 302, supra. In my view of the case sub judice, a new trial is demanded for the separate reason that the trial court erred in refusing to give defendant's timely written request to charge the law of mistake of fact.

3. I fully concur with Division 4, holding the trial court did not err in denying defendant's motion to suppress physical evidence such as the weapon, shell casing, and bloody towel seized in plain sight from his apartment during a warrantless search immediately after police arrived at the scene and discovered the victim's body. *Delay v. State*, 258 Ga. 229, 230 (2) (b) (367 SE2d 806). Nevertheless, because

of the harmful errors discussed above, I respectfully dissent from the judgment of affirmance.

DECIDED AUGUST 3, 1998 — 

*Gregory N. Crawford*, for appellant.
*Spencer Lawton, Jr., District Attorney, Ronald M. Adams, Assistant District Attorney*, for appellee.